UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| RAFAEL MARCHANTE,<br><br>                    *Plaintiff*,<br><br>        v.<br><br>REUTERS AMERICA LLC, and<br>REUTERS NEWS & MEDIA INC.,<br><br><br>                    *Defendants.* | **COMPLAINT FOR COPYRIGHT INFRINGEMENT AND COPYRIGHT MANAGEMENT INFORMATION VIOLATIONS**<br><br><br>**JURY TRIAL DEMANDED** |

Plaintiff Rafael Marchante ("Marchante" or "Plaintiff"), by his undersigned attorneys, alleges as follows, upon actual knowledge with respect to himself and his own acts, and on information and belief as to all other matters.

## I.        NATURE OF THE ACTION

1.        This is a civil action for copyright infringement and copyright management information ("CMI") violations of the U.S. Copyright Act, 17 U.S.C. §§ 101, 501, and 1202 *et seq.* that Plaintiff Rafael Marchante, a freelance photographer, brings against defendants Reuters America LLC and Reuters News & Media Inc., ("Defendants" or "Reuters")[1], regarding at least 20,110[2] of Marchante's copyright registered photographs (the "Photos" or "Photographs") for infringing conduct occurring in the U.S. only, injunctive relief in the U.S., and CMI violations in the U.S.

---

[1]    The Defendants are subsidiaries of Thomson Reuters Corporation, one of the world's largest providers of business information services and global newsgathering, operating out of The Thomson Reuters Building at 3 Times Square New York, New York 10036.

[2]    The Reuters Pictures website currently publicly displays 20,417 of Marchante's Photographs, some of which may be derivative works and/or duplicates of the 20,110 registered Photographs.

2.      On July 11, 2005, Marchante and Reuters España SA ("Reuters Spain"), also a subsidiary of Thomson Reuters Corporation,[3] entered into a written royalty agreement (the "Royalty Agreement") that licensed all of Marchante's Photos to the Defendants, in exchange for Reuters' agreement to timely and fully paying Plaintiff a royalty fee of 25% for each license sold to third parties and Reuters timely providing Plaintiff remittance of royalty statements for each quarter.

3.      After Reuters terminated Marchante as a freelance photographer in November 2020, Marchante discovered in 2021 that Reuters committed "essential"[4] or "material" breaches of the Royalty Agreement.  Marchante notified Reuters in writing on April 30, 2021 that he had terminated the Royalty Agreement, effective May 30, 2021, and sent additional termination notices as alleged below.

4.      Because the Royalty Agreement was terminated and the Defendants did not have authorization to continue exploiting any of Marchante's Photographs through a license, the Defendants engaged in U.S. copyright infringement of all of Marchante's registered photographs as well as CMI violations in the U.S.

5.      Reuters made "essential," serious, and material breaches of its only three obligations under the Royalty Agreement with Marchante:

- Reuters failed to pay Marchante in full;

---

[3]   Unless otherwise specified, any Reuters subsidiary of Thomson Reuters Corporation is hereafter identified as "Reuters."

[4]   The Royalty Agreement requires application of Spanish law and does not contain an exclusive venue clause.  Under Spanish law, a non-breaching party has the right to unilaterally terminate an agreement if the breaching party commits an "essential" breach, defined as when the breaching party (Reuters here) refused to pay the full licensing fees despite demand for such, and coupled with its continuing failure to produce remittance statements.  See Art. 1124 of the Spanish Civil Code (more fully pled below).

- Reuters failed to pay Marchante on time; and

- Reuters failed to provide Marchante royalty statements on a quarterly basis any time from 2005 through Marchante's termination of the Royalty Agreement.

6. Without authorization or a license from Marchante, the Defendants intentionally and willfully infringed Marchante's copyrights in his Photographs through the reproduction, public display, distribution, and creation of derivative works by displaying Marchante's Photographs for licensing efforts long *after* Marchante had terminated Reuters' license to do so. They also intentionally affixed and knowingly continued to distribute false and/or altered CMI to the Photographs in an effort usurp the economic value in the Photographs, with the intent to cause widespread and ongoing downstream infringement and unauthorized copying, distribution and display of Marchante's Photographs on its licensing site, Reuters Pictures, in news articles, on websites, as well as for Reuters' commercial sales in the United States for items such as posters, wall art, coffee mugs and jigsaw puzzles.

7. The Defendants' actions have also paved the way for other willful infringers in the U.S. that have refused to cease their unauthorized use of Marchante's Photographs.

8. Marchante seeks to enjoin infringement, recover statutory damages, actual damages, Defendants' profits, attorneys' fees, and costs.

## II.     THE PARTIES

9. Plaintiff Rafael Marchante is a resident and citizen of Spain and is the sole copyright owner of the 20,110 Photographs at issue.

10. Defendant Reuters America LLC is a Delaware company and principal United States operating subsidiary of Thomson Reuters Corporation.  Reuters America LLC has its principal US headquarters in Minnesota and major operating offices at 3 Times Square, New

York, New York 10036 where the alleged infringing conduct occurred.  Reuters America LLC is authorized to conduct business in New York according to the New York Department of State, and can be served at CT Corporation, 80 State Street, Albany, New York 12207, United States.

11.     Defendant Reuters News & Media Inc. is a Delaware corporation with its principal place of business at 3 Times Square, New York, New York 10036 in this District, and is a principal subsidiary of Thompson Reuters Corporation.  Reuters News & Media Inc. operates its U.S. news and media operations, producing and publishing news articles, photographs, videos, and graphics to a U.S. audience created and authored by journalists in the U.S. and abroad. Reuters News & Media Inc. is authorized to conduct business in New York according to the New York Department of State, and can be served at CT Corporation, 80 State Street, Albany, New York 12207, United States.

12.     Non-party Thomson Reuters Holdings, Inc. is a Delaware Corporation with its principal place of business at 3 Times Square, New York, New York 10036.  Thomson Reuters Holdings, Inc. owns, controls and operates its subsidiaries Defendant Reuters America LLC and Defendant Reuters News & Media Inc.  Thomson Reuters Holdings, Inc. is authorized to conduct business in New York according to the New York Department of State, and can be served at CT Corporation, 80 State Street, Albany, New York 12207, United States.

13.     Non-party Thomson Reuters Corporation is a Canadian corporation that is a publicly traded company with offices at 3 Times Square, New York, New York 10036. Thomson Reuters Corporation is traded on the New York Stock Exchange as Thomson Reuters Corp. Holdings, Inc., under the ticker symbol, "TRI."  Thomson Reuters Corporation owns and controls defendants Reuters America LLC and Reuters News & Media Inc.

### III.    JURISDICTION AND VENUE

14.    This action arises under the U.S. Copyright Act, 17 U.S.C. §§ 101, *et seq.*

15.    This Court has exclusive jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331, 1338(a) and (b) to hear copyright infringement disputes occurring in this District and the United States.

16.    This Court has personal jurisdiction over the Defendants and venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and (c) and 28 U.S. Code §1400(a) because the Defendants have infringed Marchante's copyrights within this District and, as a result, Marchante has been harmed in this District by each of the Defendants.  Numerous unauthorized licenses were sold by the Defendants to downstream infringers to its New York customers and the Defendants made available and managed the licensing of Marchante's Photographs for public display and distribution from New York, and on information and belief, the servers hosting the Marchante Photographs are found in the U.S.

17.    The Defendants use photograph management software with Orange Logic, a company headquartered in California.

18.    The Defendants employ hundreds of employees in this District.

19.    The Defendants, through Reuters' subsidiaries, own, manage and/or control real estate located in the District, specifically at 3 Times Square, New York, New York, otherwise known as the Thomson Reuters Building.

20.    The Defendants, without Marchante's authorization, reproduced, distributed, publicly displayed, created derivative works, and held out for licensing Marchante's copyrighted Photos in this District, directed licensing efforts and actually sold unauthorized licenses to customers found in this District.

## IV.   FACTUAL BACKGROUND AND TIMELINE OF EVENTS

**A.   Rafael Marchante and His Work as a Photojournalist with Reuters**

21.    Plaintiff is an award-winning photographer and photojournalist with over 20 years of experience capturing and curating his Photographs in connection with his personal and professional mission to visually portray world news and events.

22.    Plaintiff's work for Reuters began in November 2002, when he started supplying his Photographs to Reuters as a freelance photographer.

23.    From 2002 through 2006, Defendants paid Marchante a fixed rate for him to provide his Photographs of each newsworthy event he covered.

24.    From 2006 to 2010, Defendants paid Marchante a minimum rate each month for 18 working days, and if he exceeded 18 days, they paid him for any additional days for him to provide his Photographs of newsworthy events.

25.    From 2010 to 2020, Defendants paid Marchante a fixed salary from 2010 to 2020, for him to provide his Photographs of newsworthy events.

26.    Between 2002 and 2020, Marchante authored at least 20,110 Photographs that he supplied to Reuters.

27.    Marchante timely registered 20,110 Photographs with the United States Copyright Office in 2019 and 2020, prior to filing suit and prior to termination of the Royalty Agreement as alleged below.

**B.   The Royalty Agreement**

28.    On July 11, 2005, Plaintiff entered into a Freelance Photographers Royalty Agreement ("Royalty Agreement") with Reuters Spain.  The Royalty Agreement is attached as Exhibit "A."

29.     At the time Marchante entered into the Royalty Agreement, Reuters Spain was a division of the Reuters Group plc, a British multinational media and financial information company headquartered in the United Kingdom.  Reuters Group plc was acquired by the predecessor to Thomson Reuters in 2008.  Founded in 1851, Thomson Reuters Corporation is headquartered in Toronto, Canada, and has divisions across the globe, including the United States and Europe.[5]

30.     The Royalty Agreement, written in English, applies Spanish law under Paragraph 8, but clearly states that there is no exclusive venue for disputes.  Further, under Spanish law, a non-breaching party has the right to unilaterally terminate an agreement if the breaching party commits an essential, serious breach, defined as when the breaching party (Reuters here) refused to pay all the licensing fees owed and refused to pay any licensing fees from 2002 through early 2007 despite demand for such, and Plaintiff lost all faith that Reuters would ever meet its obligations under the Royalty Agreement.

31.     Under Paragraph 2 of the Royalty Agreement, Reuters received an exclusive license to use Marchante's Photographs supplied to Reuters "for the duration of the copyright" which effectively is a perpetual term.  Under Paragraph 1.2, the Photographs include not only those taken after the date of the agreement, but all photographs Plaintiff "supplied to or take or have taken in the past while on assignment for Reuters."

---

[5]   *See* Thomson Reuters 2022 Annual Report at 18 at https://ir.thomsonreuters.com/static-files/c8f80e59-857a-4312-a478-e7dc1e206891

32.     Under Paragraph 3 of the Royalty Agreement, Reuters was required to fully and timely compensate Marchante with a royalty fee of 25% of each net sale of a license to his Photographs,[6] payable quarterly.

33.     Pursuant to the Royalty Agreement, Reuters had an obligation and requirement to produce quarterly remittance (royalty) statements showing a breakdown of royalties due to Marchante from the prior quarter.

34.     The Royalty Agreement clearly acknowledges that Marchante is the sole copyright owner of all his Photographs.

**C.     Reuters' Termination of Marchante as Freelance Photographer**

35.     After nearly 18 years of Marchante supplying photographs that he authored and licensed to Reuters under the Royalty Agreement, including photographs he authored prior to executing the Royalty Agreement, Reuters terminated Marchante in November 2020, ending his service as a freelance photographer.  Reuters never provided a "for cause" reason as a basis to terminate Marchante.

36.     While Marchante stopped receiving monthly payments from Reuters as a freelance photographer pursuant to an oral agreement for freelance services to supply photographs, Reuters had a continuing requirement under the Royalty Agreement to pay him in full for all royalty payments (both past and future) from Photographs licensed via Reuters Pictures and its various affiliates and licensing agents, and a continuing obligation to provide remittance statements each quarter.

---

[6]   The Royalty Agreement defines net sales as the total revenue (less VAT, sales taxes, distributors' fees and marketing and administration costs) received by Reuters from the sales of copies of Plaintiff's photographs (a) from any Reuters photographic archive product; and (b) by any third party distribution partner of Reuters.

37.     To amicably resolve Reuters' possible exposure for labor law violations, Reuters and Marchante signed a settlement agreement on March 26, 2021 ("Settlement Agreement") related to Marchante's status as a freelance photographer.  In exchange for agreeing that he was not an employee and to release Reuters for possible labor law violations for the freelance services, Reuters Spain paid Marchante a lump sum to avoid a labor dispute for the freelance services only.  The Settlement Agreement expressly carved out and directly preserved all rights under the Royalty Agreement, including the right to *all* royalty payments, including all past and future royalty fees owed.[7]

**D.     Reuters' Essential Breaches of the Royalty Agreement**

38.     Between when the Royalty Agreement was signed and Marchante's termination by Reuters, he regularly requested remittance statements, but did not receive any statements.  He did not demand the remittance statements due to a well-known fear amongst his fellow photojournalists that rocking the boat could lead to Reuters retaliating, and Marchante would be at risk of losing his job and therefore did not aggressively pursue these statements during that time period.

39.     On or about April 30, 2021, Marchante began to suspect that Reuters had committed serious and essential breaches of the Royalty Agreement.  Marchante sent written notices to Reuters terminating the Royalty Agreement, and demanded Reuters stop using his Photographs within 30 days, or by no later than May 30, 2021.

40.     Reuters responded and disagreed, without valid explanation, claiming that the Royalty Agreement was still in effect and not terminated.

---

[7]   The Settlement Agreement relating to labor law violations in connection with Marchante's status as a freelance photographer is attached hereto as Exhibit "B."

41.     During May 2021, June 2021, October 2021 and November 2021, Marchante and his counsel sent multiple follow-up emails to Reuters, again reminding Reuters that he had terminated the Royalty Agreement because Reuters had failed to supply to him any of the remittance statements, which was required under the Royalty Agreement.  Significantly, Marchante had not been provided a single remittance statement for the years 2002, 2003, 2004, 2005, 2006, 2007, 2008, 2009, 2010, 2011, 2012, 2013, 2014, 2015, 2016, 2017, 2018, 2019, 2020 or 2021 despite Marchante asking multiple times for such statements during his time of service.

42.     On November 19, 2021, after numerous requests to provide the required remittance statements, Reuters belatedly responded in writing and sent Marchante an email with remittance statements from the second quarter of 2007 through second quarter of 2021.  The statements Reuters did provide indisputably showed it had significantly underpaid Marchante by nearly half of what was owed — 15% royalty payment instead of the agreed 25% — from 2007 through 2016, (about 10 years) of the licensing period.  This was 40% less than what Reuters was required to pay under the Royalty Agreement.

43.     Marchante further discovered that Reuters never paid him a single royalty payment from licenses sold of his Photographs from November 2002 through the first quarter of 2007.  In other words, Reuters simply never paid anything it was obligated to pay for nearly five years.

44.     For a freelance photographer earning a modest salary, being stiffed for nearly 5 years and significantly shortchanged by 40% of fees owed over another 10 year period by a multi-billion dollar news and business services conglomerate left Marchante with the reasonably objective good faith belief that Reuters had committed essential, serious and material breaches of

the Royalty Agreement and based on these facts, Reuters would never honor its obligations,

justifying termination of the agreement under Spanish law.

45.     On August 5, 2022, Marchante sent Reuters yet another email reminding them

that the Royalty Agreement was terminated and demanding that Reuters stop exploiting his

copyrighted Photographs:

> As Reuters knows, I sent written termination of the 2005 royalty agreement on May 30, 2021 and demanded that Reuters stop any use my 20,439 photos that I am the copyright owner of.  This means I demanded Reuters stop exploiting, displaying, distributing and licensing my copyrighted photos.  Despite multiple follow up email I sent to you at Reuters since May 2021 and Reuters acknowledging receiving my termination notice, Reuters has ignored me and has continued to exploit my copyrighted photos for over 1 year.  Please immediately take down my photos from all Reuters' web sites and stop using them.

46.     On August 9, 2022, Reuters responded via email to Marchante that its position

had not changed regarding the Royalty Agreement.  Nevertheless, Reuters continued exploiting,

copying, displaying, distributing and licensing Marchante's Photographs in the U.S, and failed to

send him any royalty remittance statements since June 2022.

47.     On September 8, 2022, Marchante sent yet another termination reminder via

email to remind Reuters that termination of the Royalty Agreement occurred on the basis of an

"essential breach."  Marchante wrote:

> --- Mensaje reenviado ---
> De:            rafa marchante rafaelmarchante@yahoo.es
> Fecha:         **8 de septiembre de 2022** 23:54:36
> Asunto:        Re: [EXT] Re: Rafael Marchante Royalty
> Para:          Larsen, Katharine (TR General Counsel)
> katharine.larsen@thomsonreuters.com, Woroniecki, Marcin (TR General Counsel)
> Marcin.Woroniecki@thomsonreuters.com
>
> Dear Mr. Woroniecki,
>
> As Reuters knows, I sent it written termination of the 2005 royalty agreement effective May 30, 2021 and demanded that Reuters stop any use my 20,439 photos that I am the copyright owner of.  This means I demanded Reuters stop exploiting, displaying,

distributing and licensing my copyrighted photos.  Despite multiple follow up email I sent to you at Reuters since May 2021 and Reuters acknowledging receiving my termination notice, **Reuters has ignored me and has continued to exploit my copyrighted photos for over 1 year now.  The remittance statements that Reuters provided me belatedly show that Reuters failed to pay me nearly half of the royalties I was owed under the 2005 agreement, which is an essential breach of that agreement.**  This resulted in the termination of such agreement since May 30, 2021.  Please immediately take down all my photos from all Reuters' web sites and stop using them in any way.  Please confirm you received my email.  Thank you. [*emphasis added*]

48.      Reuters never responded and has willfully ignored Marchante's demands.

49.      On June 19, 2023, Marchante, through U.S. counsel, sent another takedown demand to Reuters in the U.S.  To date, Reuters has refused to take down and stop exploiting any of Marchante's Photographs as of the date of this Complaint despite more than five take down demands that Reuters indisputably received, and all 20,110 Photographs are still being infringed by Defendants' on their website at https://pictures.reuters.com in the U.S.  Defendants continue to sell licenses for Marchante's Photographs to its U.S. customers. Attached as Exhibits C1 to C10 show infringement from the public display on Reuters Pictures.  This link also contains screenshots of numerous downstream infringement, many in this District and throughout the U.S.:

https://duncanfirmcom.sharepoint.com/:f:/g/EnS5WkJFXHtKlBBhDQHHM0gBBdEAuRkRy_3COIqQBUpJYQ?e=h8NMlz

50.      Defendants have also continued its distribution and public display of Marchante's Photographs that contain Reuters' watermark, which is a continuing effort by Defendants to usurp the economic value in Marchante's Photographs, and the watermark is knowingly intended to enable infringement.

51.     Since May 2021, Defendants sublicensed Plaintiff's Photographs to numerous U.S.-based downstream infringers without authority to do so as alleged below, including authorized licensees in this District which satisfies specific jurisdiction.

52.     Defendants publicly displayed Plaintiff's Photographs in its U.S. licensing archive and/or subscription services and publicly displayed in the U.S. Marchante's Photographs, available for "a la carte" (or "pay-as-you-go" as referred to in the Royalty Agreement) licensing through Defendants' U.S. public-facing content licensing platform known as "Reuters Pictures," available at https://pictures.reuters.com and through Reuters Connect available at https://www.reutersconnect.com/.

53.     As of the date of this filing, at least 20,110 of Plaintiff's copyrighted Photographs remain publicly displayed, with the false CMI, available for licensing on Reuters Pictures despite Marchante terminating Reuters' license and authorization to these Photographs based on essential breaches of the Royalty Agreement, namely Defendants' refusal to pay him in full, failure to pay him at all for almost 5 years, and Defendants' refusal to supply remittance statements (that would show all licensing sales information).

**E.      Marchante's Termination of Reuters' License**

54.     As alleged above, Defendants willfully and materially breached the Royalty Agreement in essential and material ways by significantly and wrongfully underpaying Marchante by 40% for most of the licensing period, not paying him at all for nearly five years, and despite being put on notice of such essential breaches, wrongfully withheld remittance statements and paid him late on multiple occasions.  Even despite being put on notice of the essential breach and refusing to pay him, Defendants have willfully ignored Marchante's demand that Reuters cease and desist from exploiting his registered Photos.

55.     Under Spanish law, courts recognize and accept unilateral termination of a contract when certain elements are met:

(i)      the contract is bilateral (reciprocal);

(ii)     the obligation breached is essential or material to the agreement;

(iii)    the breach is serious;

(iv)    the non-infringing party has not breached his own obligations, and

(v)     the breach is of such nature that the purpose of the agreement is frustrated.

56.     Marchante meets all five elements under Spanish law to have warranted a unilateral termination of the Royalty Agreement:

(i)      the Royalty Agreement between Reuters and Marchante is bilateral;

(ii)     the obligation to pay in full, on time and supported by timely documentation are breaches essential and material to the Royalty Agreement;

(iii)    the breaches are serious (refusal to pay and provide supporting documentation, even despite being put on notice multiple times from April 2021 through September 2022);

(iv)    Marchante, as the non-infringing party, has not breached his own obligations, and

(v)     Reuters' breaches are of such nature that the purpose of the Royalty Agreement is utterly frustrated when they refuse to pay Plaintiff and provide the agreed upon documentation despite being notified of such.

57.     Further, Marchante had lost any and all faith that Reuters would fulfill its obligations which justified the termination, supported by the fact the breaches were serious and essential to the parties' contracting relationship.

58.     Defendants' essential and material breaches of the Royalty Agreement gave rise to a unilateral right to terminate the Royalty Agreement, and created a legal basis under Spanish law for Marchante to have terminated the license Reuters had been granted to exploit Marchante's Photographs up to the point of termination, which is as early as May 30, 2021 based on his April 30, 2021 notice and is a reasonable notice period under Spanish law.

59.     Notwithstanding the foregoing, Marchante is not pursuing a breach of contract claim.

60.     Rather, once the Royalty Agreement, which provided for authorization and licensing rights was terminated for essential breaches, Reuters no longer had a license to Marchante's Photographers, and Marchante elected to solely pursue in this case all U.S.-based copyright infringement claims and U.S.-based CMI violations.  Marchante is not seeking to enforce any claims for copyright infringement in foreign jurisdictions outside of the U.S.

**F.     Defendants' Willful Infringement**

61.     Despite the termination of the license upon transmission of Marchante's April 30, 2021 email and a reasonable 30-day notice period, the Defendants' continued reproducing, distributing, publicly displaying, marketing, selling, creating derivative works from, and otherwise commercially exploiting the Marchante Photographs in the U.S.

62.     Fact discovery is required to reveal the full extent of the Defendants' infringement in the U.S. By way of example, following Marchante's April 30, 2021 email, the Defendants' continued to publicly display all of Marchante's Photographs in the U.S. and offer all 20,110 of the Marchante Photographs for third-party licensing via Defendants' https://pictures.reuters.com (as shown below) to its New York and U.S. customers.

15

63.    As of the date of this filing, all 20,110 of Marchante's Photographs are displayed for licensing in violation of Plaintiff's copyright as shown below.

64.    This link and the below screenshot, last checked October 9, 2023 and unchanged since the termination of the Royalty Agreement, shows Marchante's Photographs, also attached as Exhibits C 1 to C10 (both full size photographs and thumbnails).

https://pictures.reuters.com/CS.aspx?VP3=SearchResult&VBID=2C0FCIRPEK0I3&SMLS=1&RW=1729&RH=870:



65.     By way of further example, following Marchante's April 30, 2021 email, the Defendants continued to commercialize Marchante's Photographs for commercial sales using Fine Art America (a US company based on Chicago) through the sale of wall art and gift items featuring the Marchante Photographs.  See https://fineartamerica.com/featured/cotton-head-monkey-is-seen-in-senda-el-rafael-marchante.html, which was uploaded by Reuters on April 10, 2022, well after the termination notice. See the below screenshot:



66.     By continuing to publicly display and offer the Marchante Photographs for licensing via Reuters Pictures and actually distributing copies of Plaintiff's Photographs (as an unauthorized license to Reuters' U.S. customers), the Defendants also continued display of the "REUTERS" identifier in connection with the Marchante Photographs on Reuters Pictures,

which the Defendants knew to be false information conveyed in connection with the Marchante Photographs following the April 30, 2021 email's termination of Reuters' license to use the Marchante Photographs.

67.     The Defendants knew that their use of the "REUTERS" identifier would induce, enable, and facilitate downstream infringement by its subscribers and customers, and would conceal infringement of its licensing partners, agents and licensees (e.g., Alamy, Media Storehouse, and Fine Art America, among known content partners that the Defendants uses to license the Marchante Photos) because the "REUTERS" identifier falsely communicated to the public that the Defendants still had the right to use or authorize use of Plaintiff's Photographs when that was not the case.

68.     Thus, the REUTERS watermark is false CMI that enabled the Defendants' infringement and induced others to "license" the Marchante Photographs from the Defendants (which lacked the right to license them), thereby inducing those third parties to infringe Marchante's copyrights in the Marchante Photographs.

69.     Instead of potential licensees in the U.S. seeking a license from Marchante directly, potential licensees would only seek and obtain an unauthorized license from Reuters, which unlawfully received the majority or even all of the revenue generated from the sale of a license pursuant to Reuter's ongoing infringement of his Photographs.

70.     By way of example, the following is one such use of false CMI on a Marchante photograph that shows display of the REUTERS watermark as of the date of this filing, found here at https://pictures.reuters.com/archive/SURFING-PORTUGAL--GF20000041880.html (last checked October 9, 2023):



71.     The Defendants continued to display false CMI information on all 20,110 of Marchante's Photographs (the same manner as shown above in the photograph of the large wave with the REUTERS logo and watermark embedded several times on the larger photograph) without Marchante's authorization after he terminated the Royalty Agreement.

72.     By continuing to publicly display and offer the Marchante Photographs for licensing via Reuters Pictures after receiving the April 30, 2021 email, the Defendants distributed the Marchante Photographs with false CMI (e.g., to continuing displaying the false designation "REUTERS") and on information and belief, any license sold removed any CMI

such as the Marchante Photograph metadata) without Marchante's authority, especially for commercial licenses of a photograph that did not contain any reference to Marchante.

73.     In doing so, the Defendants knew and/or had reasonable grounds to know that such distribution would induce, enable, facilitate, or conceal the Defendants' infringement and the infringement of its downstream partners, subscribers, and customers because the "REUTERS" identifier and the absence of the Marchante Photograph metadata falsely suggested to third parties that the Defendants still had the right to display or authorize use of the Photographs when that was not the case.

74.     Thus, the display of the REUTERS watermark is false CMI enabled the Defendants' infringement and induced others to purchase unauthorizes "licenses" of the Marchante Photographs from the Defendants (which lacked the authority to license them), thereby inducing those third parties to infringe Marchante's copyrights in the Marchante Photographs.

75.     After receiving the April 30, 2021 email, the Defendants continued to exploit the Marchante Photographs through the Defendants' other content licensing partners (such as Alamy, Media Storehouse, and Fine Art America), including by purporting to license or otherwise provide the Marchante Photographs to these content partners for the purpose of third-party licensing through their respective licensing platforms.

76.     After receiving the April 30, 2021 email, the Defendants purported to license or otherwise provide the Marchante Photographs to Media Storehouse and Fine Art America for the purpose of making and selling infringing wall posters and other items that used the Marchante Photographs.

77.     The Defendants' use and commercial exploitation of the Marchante Photographs after May 30, 2021 constituted willful infringement of Marchante's copyrights in the Marchante Photographs, including but not limited to willful infringement of all 20,110 of the Photographs, which were all registered with the US Copyright Office prior to the termination of the Royalty Agreement.

78.     After receiving the April 30, 2021 email, the Defendants knew that their continuation of the abovementioned display and commercial exploitation of the Marchante Photographs was not authorized by Marchante but continued nonetheless despite numerous demands and follow-up emails through 2021, September 2022 and June 2023.  Defendants' conduct infringed Marchante's copyrights in the Photographs.

79.     After receiving the April 30, 2021 email, the Defendants acted with reckless disregard for, or willful blindness to whether the Defendants' continued use and commercial exploitation of the Marchante Photographs infringed Marchante's copyrights therein.

80.     The Defendants' acts as herein alleged amount to willful infringement of Marchante's copyrights in his Photographs as well as at least 20,110 CMI violations.

81.     By continuing to exploit the Marchante Photographs through the Defendants' licensing agreements with Alamy, Media Storehouse and Fine Art America, and by continuing to purport to license or otherwise provide the Marchante Photographs to Alamy, Media Storehouse and Fine Art America and perhaps others, the Defendants committed additional acts of willful direct and/or secondary infringement and CMI violations.

**G.      Downstream Infringement**

82.     The Defendants have agreements with various licensing partners or agents in the U.S., including Alamy, Media Storehouse and Fine Art America.

83.     Discovery will show the revenue sharing of licensing fees found under these various agreements and other material terms, including the Defendants' responsibility to ensure that any works subject to a claim of infringement for which the Defendants may be liable, requires the Defendants to notify each of their content partners or agents to immediately cease displaying and offering licenses to the works, delete or destroy any copies; and/or ensure that any of these licensing agents, its licensees and distributors do the same.

84.     Plaintiff provides examples of collected evidence of infringement as shown below.

### i.  Examples of Downstream Infringement

85.     On July 23, 2020, Marchante secured U.S. Copyright Registration No. VA Registration Number: VA 2-215-434, with an effective registration date of July 23, 2020 and a photo file title: 1RM2016_465, which covered the below photograph:



86.    On or about July 26, 2021, U.S. News & World Report L.P. accessed Reuter's Pictures, obtained a copy of the above Marchante Photograph, and, on July 26, 2021, published a U.S. News & World Report article entitled "Portugal's Millennium Bcp Plans Digital Drive to Boost Profitability" that featured the above Marchante Photograph with (as shown below):



87.    On August 23, 2023, Marchante, through counsel, sent U.S. News & World Report L.P., a New York entity and New York website, a takedown notice for the above photograph at the following URL: https://money.usnews.com/investing/news/articles/2021-07-26/portuguese-bank-millennium-bcps-profit-plunges-84-after-big-provisions

88.    U.S. News & World Report L.P. was never notified by the Defendants that this Photograph was infringing Marchante's copyright and that U.S. News & World Report L.P. should discontinue its distribution, public display, and commercial exploitation of such photograph.

89.     U.S. News & World Report L.P. continued to distribute, publicly display, and commercially exploit this Marchante Photograph long after May 30, 2021 until August 2023 in a manner that infringed Marchante's copyright.

90.     The Defendants knew and/or had reasonable grounds to know that such distribution would induce, enable, facilitate, or conceal the Defendants' infringement and the infringement of its downstream partners, subscribers, and customers because the "REUTERS" CMI falsely suggested to third parties that they had lawfully licensed the right to use the above Marchante Photograph when that was not the case, thereby concealing the Defendants' and U.S. News & World Report L.P.'s infringement.

91.     On July 23, 2020, Marchante secured U.S. Copyright Registration Number: VA 2-213-594, with a title: 1RM2017_603 for the following photograph:



92.     On or about July 4, 2021, U.S. News & World Report L.P. accessed Reuter's Pictures, obtained a copy of the above Marchante Photograph, and, on July 4, 2021, published a U.S. News & World Report article entitled "Portugal's Madeira to Allow Visitors With COVID Shots Not Approved by EU" that featured the Marchante Photograph as shown below:



93.     On August 23, 2023, U.S. News & World Report L.P. was sent a takedown notice by Marchante, through counsel, and up to that point had been publicly displaying the above Marchante Photograph at the following URL: https://www.usnews.com/news/world/articles/2021-07-04/portugals-madeira-to-allow-visitors-with-covid-shots-not-approved-by-eu

94.     As alleged above, as early as May 30, 2021 (if not before), U.S. News & World Report L.P. was never notified by the Defendants that this Marchante Photograph was infringing and that U.S. News & World Report L.P. should discontinue its distribution, public display, and commercial exploitation of such photograph.

25

95.     Nevertheless, U.S. News & World Report L.P. continued to distribute, publicly display, and commercially exploit this Marchante Photograph long after May 30, 2021 in a manner that infringed Marchante's copyright.

96.     The Defendants knew and/or had reasonable grounds to know that their distribution would induce, enable, facilitate, or conceal Defendants' infringement and the infringement of its downstream partners, subscribers, and customers because the "REUTERS" CMI falsely suggested to third parties that various entities U.S. News & World Report L.P. had licensed the right to use the above Marchante Photograph when that was not the case, thereby concealing the Defendants' and U.S. News & World Report L.P.'s infringement.

97.     On August 18, 2020, Marchante secured U.S. Copyright Registration No. VA Registration Number: VA 2-215-019 with an effective registration date of August 18, 2020 and a photo title of group: 1RM2014-279, which covered the below photograph:



98.     On or before May 11, 2023, Fox News Network LLC accessed Reuter's Pictures, obtained a copy of the above Marchante Photograph, and, on May 11, 2023, published a Fox News Network LLC article entitled "Portugal may start banning smoking to outdoor areas, limit tobacco sales" that featured the above Marchante Photograph as shown below:



🔒 https://www.foxnews.com/world/portugal-may-start-banning-smoking-outdoor-areas-limit-tobacco-sales

From 2025, only licensed tobacconists and airport shops will be allowed to sell cigarettes and other tobacco products, meaning that vending machines, bars, restaurants and petrol stations will no longer be allowed to offer them.

A pastry chef smokes as he talks on the phone in downtown Lisbon on April 2, 2014. Smoking outdoors may soon be banned in Portugal under a legislation presented Thursday. (REUTERS/Rafael Marchante/File Photo)

99.     On August 23, 2023, Fox News Network LLC was sent a takedown notice by Marchante, through counsel, and up to that point had been publicly displaying the above Marchante Photograph at the following URL: https://www.foxnews.com/world/portugal-may-start-banning-smoking-outdoor-areas-limit-tobacco-sales (last checked October 9, 2023).

100.    As alleged above, as early as August 23, 2023 (if not before), Fox News Network LLC was never notified by the Defendants that this Marchante Photograph was infringing and

that Fox News Network LLC should discontinue its distribution, public display, and commercial exploitation of such photograph.

101.    Nevertheless, Fox News Network LLC continued to distribute, publicly display, and commercially exploit this Marchante Photograph long after May 30, 2021 in a manner that infringed Marchante's copyright.

102.    The Defendants knew and/or had reasonable grounds to know that their distribution would induce, enable, facilitate, or conceal Defendants' infringement and the infringement of its downstream partners, subscribers, and customers because the "REUTERS" CMI falsely suggested to third parties that various entities such as Fox News Network LLC had licensed the right to use the above Marchante Photograph when that was not the case, thereby concealing the Defendants' and Fox News Network LLC infringement.

103.    As of April 1, 2023, Marchante was still featured as one of Reuters' photographers, falsely suggesting that that he was still a photographer with Reuters.  See https://wideimage.reuters.com/photographer/rafael-marchante.  The link was disabled in June 2023.

## V.  CLAIMS FOR RELIEF

### COUNT I
### Copyright Infringement Under 17 U.S.C. §§ 101 *et seq.*
### (All Defendants)

104.    Marchante repeats and realleges each and every allegation set forth in the preceding paragraphs of this Complaint.

105.    Marchante owns valid and existing copyright registrations in the 20,110 Marchante Photographs.  Attached as Exhibit D is a chart of the US Copyright Office registration numbers for all the registered Marchante Photographs, including the deposit copy file name of

28

each Photograph, Plaintiff's understanding of the date of first publication of each Photograph, and the effective registration date.

106.     Marchante has not authorized Defendants or their partners, agents, licensees, affiliates, employees, contractors, customers, subscribers, or users to use, copy, publicly display, distribute, license, manipulate, or otherwise commercially exploit the Marchante Photographs.

107.     In the United States and specifically in this District, Defendants have directly infringed Marchante's copyrights in the Marchante Photographs by using, copying, publicly displaying, distributing, licensing, manipulating, or otherwise commercially exploiting the Marchante Photographs without Marchante's authorization and with actual notice of Marchante's copyright claims.

108.     Defendants' infringements were willful and intentional.

109.     Defendants intentionally and willfully infringed Marchante's copyrights in the Marchante Photographs by continuing to copy, distribute, publicly display, market, sell, and otherwise commercially exploit the Marchante Photographs after Marchante terminated his authorization to do so, and each of them did so with actual knowledge that such authorization was revoked, and with actual notice of Marchante's copyright claims.

110.     Defendants directly benefitted financially from each other's copyright infringement of the Marchante Photographs and had the right and ability to supervise and control each other's infringement of the Marchante Photographs.

111.     Defendants had actual knowledge of each other's infringement of the Marchante Photographs, and each materially contributed to the other's infringement of the Marchante Photographs above.

112.    Defendants each directly benefitted financially from the copyright infringement of the Marchante Photographs and had the right and ability to supervise and control the infringement of those to whom each of them marketed, licensed, sold, or otherwise facilitated the use of the Marchante Photographs.

113.    Defendants each directly benefitted financially from and had the right and ability to supervise and control its respective employees', agents, and contractors' infringement of Marchante Photographs.

114.    Defendants are each vicariously liable for their respective employees', contractors', and/or agents' infringement of the Marchante Photographs.

115.    Defendants each knew or had reason to know of their respective employees, contractors, and agents' infringement and intentionally induced and/or materially contributed to such infringement.

116.    Defendants are each contributorily liable for their respective employees', contractors', and agents' infringements.

117.    The Defendants are each secondarily liable for their respective employees, contractors, and agents' infringements.

118.    Marchante has suffered actual harm and incurred significant costs as a direct and proximate result of Defendants' direct and secondary infringements.

119.    Pursuant to 17 U.S.C. § 504(c)(2), as a result of Defendants' infringements of Marchante's exclusive rights in the Marchante Photographs, Marchante is entitled to recover statutory damages of a minimum of $750 per Photograph to a maximum amount of $150,000 (for willful infringement) with respect to each of his 20,110 registered Marchante Photographs, all

registered prior to May 30, 2021 pursuant to 17 U.S.C. § 504(c) when the Royalty Agreement and authorization through a license was terminated.

120.    Alternatively, at Marchante's election prior to entry of final judgment, Marchante is entitled to recover damages based on his actual damages suffered as a result of Defendants' infringements and the disgorgement of Defendants' profits attributable to the infringements, pursuant to 17 U.S.C. § 504(b), which amounts will be proven at trial.

121.    Marchante is entitled to his costs, including reasonable attorneys' fees, pursuant to 17 U.S.C. § 505.

122.    Defendants' conduct has caused, and any continued infringing conduct will continue to cause, irreparable harm to Marchante, unless enjoined by this Court.  Marchante has no adequate remedy at law.  Pursuant to 17 U.S.C. § 502, Marchante is entitled to a permanent injunction prohibiting infringement of Marchante's exclusive copyrights in the Marchante Photographs by the Defendants and all persons acting in concert with them.

### COUNT II
### Violations of Copyright Management Information Under 17 U.S.C. § 1201 et seq.
### (All Defendants)

123.    Marchante repeats and realleges each and every allegation set forth in the preceding paragraphs of this Complaint.

124.    Under 17 U.S.C. § 1202(a), no person shall knowingly and with the intent to induce, enable, facilitate, or conceal infringement provide copyright management information that is false, or distribute or import for distribution copyright management information that is false.

125.    Defendants knowingly affixed and continued their distribution of false copyright management information in connection with the reproduction, distribution, public display and holding out for license of the Marchante Photographs.

126.    The false copyright management information incorrectly and falsely identifies "REUTERS" as the copyright interest holder and/or authorized licensor of each of the Marchante Photographs, and communicates to the public and potential licensees that only Reuters is displaying and offering for licensing Marchante's Photographs.

127.    Reuters' knowing continuation of unlawful distribution of copyright management information provided in connection with the reproduction, distribution, public display and holding out for license of the Marchante Photographs was intended by Defendants to facilitate, induce and enable the infringement of Marchante's exclusive copyrights.

128.    The false copyright management information communicated by Reuters was knowingly intended to induce customers and potential customers of the Marchante Photographs to believe that only Defendants, as opposed to Marchante, owned or controlled the copyrights and licensing rights in the Marchante Photographs so they would pay Defendants a fee for the ability to make further reproductions and distributions of the Marchante Photographs, e.g., by and through Reuters Pictures and through its agents.

129.    These actions constitute willful and deliberate violations of the Digital Millennium Copyright Act, 17 U.S.C. § 1202(a).

130.    By reason of Defendants' CMI violations, Marchante has suffered damages and is entitled to recover his actual damages and to require disgorgement of any additional profits of Defendant attributable to the violations, pursuant to 17 U.S.C. § 1202(c)(2).

131.    Alternatively, and at Marchante's sole discretion exercised any time prior to entry of final judgment, Marchante is entitled to recover statutory damages in an amount between $2,500 and $25,000 per violation of the Digital Millennium Copyright Act, pursuant to 17 U.S.C. § 1203(c)(3)(B) for at least 20,110 CMI violations.

132.    Further irreparable harm is imminent as a result of Defendants' conduct, and Marchante is without an adequate remedy at law.  Marchante is therefore entitled to an injunction, in accordance with 17 U.S.C. § 1203(b), restraining Defendants, their officers, directors, agents, employees, representatives, assigns, and all persons acting in concert with Defendants from engaging in further violations of the Digital Millennium Copyright Act by continuing to distribute false CMI on each of Marchante's Photographs.

133.    Marchante is entitled to recover costs and attorneys' fees in accordance with 17 U.S.C. § 1203(b)(4) and (5).

## VI. **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Marchante requests that this Court enter judgment in his favor on each and every claim for relief set forth above and award him relief, including the following:

1)    ***For Count I, Copyright Infringement Under 17 U.S.C. §§ 101 et seq.***

   a.    That an Order be entered against Defendants for violating the provisions of the Copyright Act, 17 U.S.C. §§ 101 *et seq*. by infringing Plaintiff's copyrights in the Marchante Photographs;

   b.    That an Order be entered against Defendants in favor of Plaintiff for such damages as Plaintiff has sustained as a result of Defendant's infringement of Plaintiff's copyrights;

c.   That an Order be entered compelling Defendants to account for and/or disgorge all gains, profits, and advantages derived by Defendants as a result of infringements of Plaintiff's copyrights or such damages supported by the provisions of the Copyright Act, 17 U.S.C. §§ 101 *et seq.*;

d.   That an Order be entered against Defendants pursuant to 17 U.S.C. § 504 awarding enhanced statutory damages for each infringement of Plaintiff's 20,110 registered photographs;

e.   That an Order be entered granting injunctive relief against Defendants pursuant to 17 U.S.C. § 502 preventing and restraining infringement of Plaintiff's copyrights by Ordering Defendants, their agents, or anyone working for, in concert with, or on their behalf not to use, publish, publicly display, distribute, or in any way disseminate Plaintiff's copyrighted works;

f.   That an Order be entered against Defendants pursuant to 17 U.S.C. § 503 for the impounding and return to Plaintiff of all Marchante Photograph copies in their possession, including but not limited to the original, high-resolution hard copy or digital image files for all the Marchante Photographs captured by Marchante from 2005 to 2020;

g.   That an Order be entered against Defendants pursuant to 17 U.S.C. § 503 for the impounding and/or destruction of all materials used in the violation of Plaintiff's exclusive copyrights and any other articles by means of which such copies may be reproduced;

h.   That an Order be entered requiring Defendants to pay Plaintiff his costs and attorneys' fees in this action pursuant to 17 U.S.C. § 505;

2) ***For Count II, Violations of Copyright Management Information Under 17 U.S.C. §§ 1201 et seq.***

    a.  That an Order be entered against Defendants for violating the provisions of the Copyright Act, 17 U.S.C. §§ 1201 *et seq*. by committing copyright management information violations in connection with the Marchante Photographs;

    b.  That an Order be entered against Defendants in favor of Plaintiff for such damages as Plaintiff has sustained as a result of Defendants' copyright management information violations in connection with 20,110 of Marchante Photographs;

    c.  That an Order be entered compelling Defendants to account for and/or disgorge all gains, profits, and advantages derived by Defendants' copyright management information violations in connection with the Marchante Photographs pursuant to 17 U.S.C. §§ 1203 and/or such damages supported by the provisions of the Copyright Act, 17 U.S.C. §§ 101 *et seq*.;

    d.  That an Order be entered against Defendants pursuant to 17 U.S.C. § 1203 awarding enhanced statutory damages for each copyright management information violation in connection with the Marchante Photographs;

    e.  That an Order be entered granting injunctive relief against Defendants pursuant to 17 U.S.C. § 1203 preventing and restraining copyright management information violations in connection with the Marchante Photographs by ordering Defendants, their agents, or anyone working for, in concert with, or on their behalf to discontinue such violative acts;

f. That an Order be entered against Defendants pursuant to 17 U.S.C. § 1203 for the impounding and/or destruction of all materials used in the copyright management information violations in connection with the Marchante Photographs and other articles by means of which such acts were undertaken;

g. That an Order be entered requiring Defendants to pay Plaintiff his costs and attorneys' fees in this action pursuant to 17 U.S.C. § 1203;

3) *For All Counts*

a. That an Order be entered requiring Defendants to pay Plaintiff punitive damages, as permitted by law, in an amount to be determined due to the foregoing willful acts;

b. That Plaintiff be granted prejudgment and post-judgment interest as permitted by law; and

c. Other relief as the Court may deem appropriate.

## JURY DEMAND

Pursuant to Fed. R. Civ. P. 38, Plaintiff Rafael Marchante respectfully demands a trial by jury on all issues properly triable by a jury in this action.

Dated:  October 9, 2023

Respectfully submitted,

**DUNCAN FIRM, P.A.**

By: */s/ James H. Bartolomei, III*
James H. Bartolomei, III
SDNY Bar JB7747
Of Counsel at Duncan Firm, P.A.
809 W. 3rd Street
Little Rock, Arkansas 72201
Telephone: 501-228-7600
james@duncanfirm.com

and

**CERA LLP**

Solomon B. Cera (*pro hac vice* forthcoming)
Pamela A. Markert (*pro hac vice* forthcoming)
201 California Street, Suite 1240
San Francisco, California 94111
Telephone: 415-777-2230
scera@cerallp.com
pmarkert@cerallp.com

and

**HOBEN LAW**

Bryan D. Hoben, Esq.
1112 Main Street
Peekskill, New York 10566
Telephone: 347-855-4008
bryan@hobenlaw.com

*Attorneys for Plaintiff Rafael Marchante*