**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

RAFAEL MARCHANTE,

                Plaintiff,

       v.                              Case No. 1:23-cv-08864-DEH

REUTERS AMERICA LLC, and
REUTERS NEWS & MEDIA INC.,

                Defendants.

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT

BALLARD SPAHR LLP
1675 Broadway, 19th Floor
New York, NY 10019
Tel.:  (212) 850-6139
Fax:  (212) 223-1942

Thomas B. Sullivan
Catherine Seibel

*Counsel for Defendants*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ iii

PRELIMINARY STATEMENT ......................................................................................... 1

STATEMENT OF FACTS ................................................................................................. 2

A.     The Parties ........................................................................................................... 2

B.     Plaintiff's Compensation and Contractual Relationship .................................... 3

C.     The Current Dispute ............................................................................................ 4

ARGUMENT ..................................................................................................................... 6

I.     PLAINTIFF'S COMPLAINT SHOULD BE DISMISSED BY
       REASON OF *FORUM NON CONVENIENS* ...................................................... 6

       A.     Plaintiff's Choice of Forum Should be Given Less Deference ................ 7

       B.     Spain is an Adequate Alternative Forum ................................................. 9

       C.     Balance of Private and Public Interest Factors Favors
              Dismissal ................................................................................................ 11

              1.     Private Interest Factors Favor Dismissal ................................... 11

              2.     Public Interests Favor Dismissal ................................................ 13

II.    IN THE ALTERNATIVE, THE ACTION SHOULD BE
       DISMISSED OR STAYED BASED ON INTERNATIONAL
       COMITY ................................................................................................... 14

       A.     Similarity of the Parties and Issues ....................................................... 15

       B.     Interests of Judicial Economy ............................................................... 18

       C.     Order in Which the Actions Were Filed ................................................ 18

       D.     Adequacy of the Alternative Forum ...................................................... 19

       E.     Convenience and Potential Prejudice to the Parties .............................. 19

       F.     Connection Between the Litigation and the United States or
              Spain ....................................................................................................... 20

III.   IN THE ALTERNATIVE, THE COMPLAINT SHOULD BE
       DISMISSED BECAUSE THE FREELANCER AGREEMENT IS
       VALID ...........................................................................................................20

       A.   The Freelancer Agreement Granted an Exclusive License and
            For a Perpetual Term .............................................................................20

       B.   Plaintiff's Theory That He Terminated the Freelancer
            Agreement in April 2021 Is Incorrect ...................................................21

       C.   Subsequent Communications Did Not Terminate the
            Freelancer Agreement Either .................................................................22

CONCLUSION........................................................................................................24

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                 **Page(s)**

*Advanced Marine Techs. v. Burnham Sec.*,
   16 F. Supp. 2d 375 (S.D.N.Y. 1998)..........................................................................5

*Aenergy v. Republic of Angola (Aenergy II)*,
   31 F.4th 119 (2d Cir. 2022) ..................................................................6, 7, 11, 13

*Aguinda v. Texaco*,
   303 F.3d 470 (2d Cir. 2002)................................................................................10

*Alcoa S.S. v. M/V Nordic Regent*,
   654 F.2d 147 (2d Cir. 1980)..................................................................................7

*Amidax Trading Grp. v. S.W.I.F.T.*,
   671 F.3d 140 (2d Cir. 2011)..................................................................................5

*Argus Media v. Tradition Fin. Servs.*,
   2009 WL 5125113 (S.D.N.Y. Dec. 29, 2009) ....................................................16

*Barshay v. Naithani*,
   2023 WL 2051170 (S.D.N.Y. Feb. 16, 2023)...................................................4, 5

*Bohn v. Bartels*,
   620 F. Supp. 2d 418 (S.D.N.Y. 2007)................................................................10

*Davis v. Blige*,
   505 F.3d 90 (2d Cir. 2007)............................................................................20, 24

*Dow Jones & Co. v. Juwai Ltd.*,
   2023 WL 2561588 (S.D.N.Y. Mar. 17, 2023) ...................................................14

*Erausquin v. Notz, Stucki Mgmt. (Berm.)*,
   806 F. Supp. 2d 712 (S.D.N.Y. 2011)...............................................................6, 7

*Experience Hendrix v. Noel Redding Est.*,
   2023 WL 3479699 (S.D.N.Y. May 16, 2023) ....................................................16

*FRHUEB v. Abdala*,
   2022 WL 7150242 (S.D.N.Y. Sept. 30, 2022)..............................................17, 18, 19

*Friedman v Arduino*,
   854 F. App'x 390 (2d Cir. 2021) ........................................................................12

*Iragorri v. United Techs.*,
   274 F.3d 65 (2d Cir. 2001)....................................................................................9

*Jackson Nat'l Life Ins. v. Merrill Lynch & Co.*,
 32 F.3d 697 (2d Cir. 1994)...........................................................................2

*JP Morgan Chase Bank v. Altos Hornos de Mex.*,
 412 F.3d 418 (2d Cir. 2005).......................................................................14

*Kingstown Cap. Mgmt. v. Vitek*,
 2022 WL 3970920 (2d Cir. Sept. 1, 2022) ................................................2

*Kingsway Fin. Servs. v. Pricewaterhouse-Coopers, LLP*,
 420 F. Supp. 2d 228 (S.D.N.Y. 2005).........................................................2

*Maxwell Commc'n. Corp. v. Societe Generale*,
 93 F.3d 1036 (2d Cir. 1996).......................................................................14

*Murray v. BBC*,
 81 F.3d 287 (2d Cir. 1996).........................................................................12

*Norex Petroleum, v. Access Indus.*,
 416 F.3d 146 (2d Cir. 2005).........................................................................7

*Ole Media Mgm't v. EMI Apr. Music*,
 2013 WL 2531277 (S.D.N.Y. June 10, 2013) .........................................14, 15, 16, 18

*Overseas Media v. Skvortsov*,
 441 F. Supp. 2d 610 (S.D.N.Y. 2006)...................................................12, 13

*Paulo v. Agence France-Presse*,
 2023 WL 2707201 (S.D.N.Y. Mar. 30, 2023) ....................................7, 8, 13

*Pesquera v. Perez*,
 2021 WL 254193 (N.D. Cal. Jan. 26, 2021) ............................................10

*Pollux Holding v. Chase Manh. Bank*,
 329 F.3d 64 (2d Cir. 2003)........................................................................6, 8

*Royal & Sun Alliance Ins. Co. of Can. v. Century Int'l Arms*,
 466 F.3d 88 (2d Cir. 2006).....................................................................14, 15

*Rudersdal v. Harris*,
 2020 WL 9815180 (S.D.N.Y. Aug. 18, 2020)............................................9

*Sinochem Int'l v. Malay. Int'l Shipping*,
 549 U.S. 422 (2007).....................................................................................6

*Tarazi v. Truehope Inc.*,
 958 F. Supp. 2d 428 (S.D.N.Y. 2013)............................................... *passim*

*Taub v. Marchesi Di Bartolo*,
     2009 WL 4910590 (E.D.N.Y. Dec. 10, 2009) ............................................................19

*The Wave Studio v. Gen. Hotel Mgmt.*,
     712 F. App'x 88 (2d Cir. 2018) ...........................................................................11

*Thornton Tomasetti v. Anguillan Dev. Corp.*,
     2015 WL 7078656 (S.D.N.Y. Nov. 13, 2015) ...........................................................18

*Yung v. Lee*,
     160 F. App'x 37 (2d Cir. 2005) ............................................................................10

**Statutes & Other Authorities**

Fed R. Civ. P. 12 ...............................................................................................1, 2, 20

Spanish Intellectual Property Act, art. 140 .........................................................................9

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendants Reuters America LLC and Reuters News & Media Inc. ("Defendants"), by and through their undersigned counsel, hereby submit this Memorandum of Law in support of their motion to dismiss the Complaint of Plaintiff Rafael Marchante ("Plaintiff" or "Mr. Marchante") based on *forum non conveniens* and international comity, or in the alternative, for failure to state a claim.

## PRELIMINARY STATEMENT

This dispute began in Spain, and it should be resolved in Spain.  There is no meaningful connection to the United States.

As the Complaint alleges, Plaintiff is a Spanish freelance photographer living in Spain who entered into a freelancer agreement governed by Spanish law.  Under that agreement, Plaintiff shot photographs commissioned by the Reuters news agency—specifically by Reuters España, the Madrid-based counterpart of Defendants.  Indeed, almost all of Plaintiff's photographs were taken of news events in Spain, Portugal, or Morocco.

In this lawsuit, Plaintiff alleges that he terminated this freelancer agreement in 2021 and that consequently Defendants have infringed the copyrights of his photographs.  But the principal legal issue—the validity of the freelancer agreement—indisputably needs to be decided under myriad and disputed provisions of Spanish law.  For that reason and several others, Spain is the most appropriate forum for this dispute, including that (1) Plaintiff first raised these issues with Reuters España and (2) there is *already* a pending legal action in Spain involving the same facts, the same laws, and the same freelancer agreement.

1

For those reasons and as set forth in greater detail below, this Court should dismiss this action on *forum non conveniens* grounds or, alternatively, stay or dismiss it as a matter of international comity.  Should the Court decline to do so, Defendants alternatively argue that as a matter of Spanish law, the freelancer agreement is still valid and the Complaint should be dismissed under Rule 12(b)(6).  In short, Plaintiff did not and could not validly terminate the freelancer agreement, leaving Defendants' rights in the images intact.

## STATEMENT OF FACTS[1]

### A.    The Parties

Reuters America LLC and Reuters News & Media, Inc.—wholly-owned subsidiaries of Toronto-based Thomson Reuters Corporation—are part of Reuters, a global news agency that is "one of the world's largest providers of business information services and global newsgathering." Compl. ¶¶ 1 n.1, 10, 11, 29.  Among numerous other journalistic activities, Reuters licenses newsworthy photographs to media organizations around the world, both on a subscription and an *a la carte* basis.  *Id.* ¶ 52.  The images offered on this service come from several sources, including full-time staff photographers and freelance photographers.  *Id.*

---

[1] For purposes of this motion only, Defendants accept, as they must, the allegations in the Complaint as true.  *See, e.g.*, *Jackson Nat'l Life Ins. v. Merrill Lynch & Co.*, 32 F.3d 697, 699-700 (2d Cir. 1994).  In ruling on the *forum non conveniens* motion, the Court may consider factual information from outside the boundaries of the Complaint, such as that from affidavits.  *See Kingstown Cap. Mgmt. v. Vitek,* 2022 WL 3970920, at *1 (2d Cir. Sept. 1, 2022).  The court may also consider affidavit evidence in ruling on the comity issue.  *See Kingsway Fin. Servs. v. Pricewaterhouse-Coopers, LLP*, 420 F. Supp. 2d 228, 233 n.5 (S.D.N.Y. 2005).  However, the extraneous factual information is not necessary to resolve Defendants' 12(b)(6) motion in Section III, which as discussed herein, can be resolved solely by the Complaint, matters incorporated by reference to the Complaint, and application of Spanish law.

Rafael Marchante, a resident and citizen of Spain, is a photographer who had a freelancer contract with a Spanish subsidiary of Thomson Reuters Corporation, Reuters España SA (together with its successor entities, "Reuters España"). Compl. ¶¶ 1, 9, 22–26; 35. Reuters España is based in Madrid. Decl. of Anna Valderrama ("Valderrama Decl.") ¶ 5. Plaintiff was assigned to cover events in Spain, Portugal, and Morocco. Compl., Ex. B ¶ 1; Valderrama Decl. ¶ 7. In general, local news teams in Spain, Portugal, and Morocco would decide what current news events they were covering, and the photo editor would assign Plaintiff to take photographs related to those events. Valderrama Decl. ¶ 8. The photo editor managing Plaintiff was based in Spain, *id.* ¶¶ 9-10, as was the editorial operations manager who oversaw the calculation and payment of his royalty fees. *Id.* ¶ 12. Plaintiff was never assigned to cover the news or take photographs in the United States or about events in the United States. *Id.* ¶ 16. He ceased performing assignments for Reuters España in November 2020. Compl. ¶ 3.

**B.    Plaintiff's Compensation and Contractual Relationship**

In exchange for performing certain regular assignments, Reuters España paid Plaintiff assignment fees, which generally reflected a fixed monthly amount. *Id.* ¶¶ 23-25. As such, Reuters España compensated Plaintiff regardless of whether his photographs were used or sold. *Id.* Those fees were paid into Plaintiff's bank account in Spain or Portugal. Valderrama Decl. ¶ 11.

On July 11, 2005, Plaintiff entered into a contractual agreement with Reuters España titled the "Freelance Photographers Royalty Agreement." Compl. ¶ 28 & Ex. A (the "Freelancer Agreement"). This Freelancer Agreement addressed the rights and disposition of the photographs that Plaintiff took while on assignment and directed Plaintiff to "select in good faith the Photographs which in [his] reasonable opinion are the

best Photographs taken on that assignment and supply these to Reuters." *Id.*, Ex. A § 1.4.

Those selected photographs were defined under the Freelancer Agreement as the

"Reuters Photographs," and were exclusively licensed to Reuters España and other

entities in the Reuters group of companies, including Defendants, while the remaining

photographs, defined as the "Out-takes," were non-exclusively licensed to the same

group. *Id.*; *see also id.* §§ 2.1–2.4 (granting rights including the right to display,

reproduce, distribute and edit the images).

Besides granting Defendants rights in the photographs, the Freelancer Agreement

stated that Plaintiff would receive a royalty fee of 25% of Net Sales of any photographs

that the Reuters companies sold on an *a la carte* basis. *Id.* § 3.1–3.5. The Freelancer

Agreement "is governed by the laws of Spain and any disputes arising in connection with

it shall be subject to the non-exclusive jurisdiction of the Courts of Barcelona." *Id.* § 8.

The term of the Freelancer Agreement was to be as long as Plaintiff carried out

assignments for Reuters España, but the copyright license and Plaintiff's rights to receive

royalty payments survived the end of the term. *Id.* § 6. Royalties were paid into

Plaintiff's Spanish bank account. Valderrama Decl. ¶ 12.

## C.    The Current Dispute

Following his termination and the settlement of employment-related claims in

March 2021, Compl. ¶ 37, on April 30, 2021, Marchante sent a letter to Reuters España

purporting to renounce the Freelancer Agreement. *See* Decl. of Catherine I. Seibel

("Seibel Decl."), Ex. A.[2] In the letter, Plaintiff announced that he was unilaterally

---

[2] The Court may consider this document, even though Plaintiff did not attach it to his
Complaint, because it is incorporated by reference therein. *See, e.g.*, *Barshay v.
Naithani,* 2023 WL 2051170, at *6 (S.D.N.Y. Feb. 16, 2023) ("A document or
communication may be incorporated by reference where the plaintiff expressly refers to

4

withdrawing from the Freelancer Agreement, with his "termination being effective on May 30, 2021." *Id.* The letter concluded by requesting royalty statements, but did not cite the non-provision of those statements as a reason for termination. *Id.*[3] Notably, the letter did not allege any breach by Reuters España or state that such a breach was the reason for his decision to terminate the contract. *Id.* Instead, Plaintiff cited the end of his employment with the company. *Id.* In the Complaint, Plaintiff maintains that the Freelancer Agreement was terminated on April 30, 2021 and that Reuters' license expired 30 days later. Compl. ¶ 61; *see also id.* ¶¶ 41, 45 (casting subsequent communications as "remind[ers]" of the purported April 2021 termination).

However, as of April 30, 2021, Plaintiff concedes that he did not know that Reuters had allegedly breached the Freelancer Agreement. At the point the letter was sent, "[o]n or about April 30, 2021, [he] ***began to suspect*** that Reuters had committed serious and essential breaches of the [Freelancer] Agreement." *Id.* ¶ 39 (emphasis added). Indeed, neither he nor Reuters realized that royalties were allegedly underpaid until November 19, 2021 when he was provided with remittance statements, *see id.* ¶¶ 42-43—nearly seven months ***after*** he sent the April 30 letter. It was only after he received these remittance statements that Plaintiff was allegedly left with the belief that "Reuters had committed essential, serious and material breaches of the [Freelancer]

---

the document or communication or otherwise relies on it in his pleadings."), *appeal filed*, No. 23-382 (2d Cir. Mar. 17, 2023); *Advanced Marine Techs. v. Burnham Sec.,* 16 F. Supp. 2d 375, 378 (S.D.N.Y. 1998) ("As plaintiff . . . has incorporated the letter by reference into the complaint, the Court considers the entire letter under the settled law of this Circuit.").

[3] The letter itself governs over Plaintiff's contrary allegations about its contents in the Complaint. *Amidax Trading Grp. v. S.W.I.F.T.*, 671 F.3d 140, 146-47 (2d Cir. 2011).

Agreement and based on these facts, Reuters would never honor its obligations, justifying termination of the agreement under Spanish law." *Id.* ¶ 44.

On October 9, 2023, Plaintiff filed the instant suit.  Dkt. 1.  Only two days later, Reuters España filed suit against Plaintiff in Spain to resolve the validity of the Freelancer Agreement at issue in the instant suit.  Seibel Decl., Ex. B.

## **ARGUMENT**

## I.   **PLAINTIFF'S COMPLAINT SHOULD BE DISMISSED BY REASON OF** ***FORUM NON CONVENIENS***

*Forum non conveniens* is a discretionary device "under which a federal district court may dismiss an action on the ground that a court abroad is the more appropriate and convenient forum for adjudicating the controversy." *Sinochem Int'l v. Malay. Int'l Shipping*, 549 U.S. 422, 425 (2007).  Courts analyzing *forum non conveniens* issues in the Second Circuit apply a three-step process: "(1) determine the degree of deference properly accorded the plaintiff's choice of forum; (2) consider whether the alternative forum proposed by the defendants is adequate to adjudicate the parties' dispute; and (3) balance the private and public interests implicated in the choice of forum." *Aenergy v. Republic of Angola (Aenergy II)*, 31 F.4th 119, 128 (2d Cir. 2022), *cert. denied*, 143 S. Ct. 576 (2023).  "The focus of any *forum non conveniens* inquiry, as the term itself suggests, is to ensure that the place where a trial is held is convenient, that is, that the forum fits the needs and is suitable to the circumstances of the case." *Pollux Holding v. Chase Manh. Bank*, 329 F.3d 64, 67 (2d Cir. 2003).  The decision to dismiss by reason of *forum non conveniens* is within the sound discretion of the district court. *Id.* at 70.[4]

---

[4] In resolving a *forum non conveniens* challenge, a court may "rely on evidence outside the pleadings, including affidavits." *Erausquin v. Notz, Stucki Mgmt. (Berm.)*, 806 F.

A.      **Plaintiff's Choice of Forum Should be Given Less Deference**

Plaintiff's choice of this District should not be given deference, as he is a Spanish citizen who not only still lives in Spain but also seeks redress about work directed from Spain under a contract governed by Spanish law—and one which is already under review by a Spanish court.

In the Second Circuit, courts evaluate a plaintiff's choice of forum on a "sliding scale" of deference.  A plaintiff who brings suit in their home forum is entitled to greater deference, while a "foreign plaintiff who sues in a United States forum is entitled to less deference because one may not easily presume that choice is convenient." *Paulo v. Agence France-Presse*, 2023 WL 2707201, at *6 (S.D.N.Y. Mar. 30, 2023) (cleaned up); *see also Aenergy, II*, 31 F.4th at 128 (where plaintiff was entity incorporated in Angola, the district court reasonably afforded "less deference" to its choice of United States as the forum because it was a "foreign plaintiff").  Courts are directed to compare "the lawsuit's bona fide connection to the United States" and "considerations of convenience" against, on the other hand, indicia "that the plaintiff's choice of a U.S. forum was motivated by forum-shopping reasons." *Norex Petroleum, v. Access Indus.*, 416 F.3d 146, 154 (2d Cir. 2005).

Here, it is clear that Plaintiff's choice of forum should be given less deference because this is not his home forum.  Plaintiff is a Spanish citizen and resident of Spain. Compl. ¶ 9; *see Paolo*, 2023 WL 2707201, at *6 (Portuguese photojournalist plaintiff properly accorded less deference).  His residence is not convenient to any court in the

---

Supp. 2d 712, 724 (S.D.N.Y. 2011) (citing *Alcoa S.S. v. M/V Nordic Regent*, 654 F.2d 147, 158 (2d Cir. 1980) (en banc)).

United States (much less this specific District), and certainly far less convenient than the courts of the country in which he actually resides.

Plaintiff and this case have little or no connection to the United States. The fact that Defendants are located in the United States does not suggest otherwise. A plaintiff's choice of defendants' home forum when otherwise not convenient for him "suggests the possibility that plaintiff's choice was made for reasons of trial strategy," and only merits deference to the extent plaintiff has bona fide connection to this forum. *Pollux*, 329 F.3d at 74. Plaintiff has no such connection. Among other things:

- Plaintiff worked as a freelance photographer in Spain and Portugal, *see* Compl., Ex. B ¶ 1, not the United States;

- His contract was not with either of the Defendants but rather their Spanish affiliate Reuters España, *see id.*, Ex. A ¶ 1.1;

- That contract applies Spanish law and provides for non-exclusive jurisdiction in a Spanish court, *see id.* ¶ 8;

- It was Reuters España, not either Defendant, who was responsible for paying him assignment fees and royalties, *id.* ¶¶ 3.1, 3.2;

- It was Reuters España, not either Defendant, who was responsible for providing a royalties report, *id.* ¶ 3.5;

- The purported termination letter was sent to Reuters España, Seibel Decl, Ex. A.

*See Paolo*, 2023 WL 2707201, at *8 (finding plaintiff's choice of forum was entitled to less deference in copyright case brought by photographer against news agency, because "many of the events underlying Leong's claims occurred not in this District—or anywhere in the United States—but in Portugal").

The availability of witnesses and documents also demonstrates the inconvenience of this District. Perhaps the most important witness—Mr. Marchante himself—resides in

Spain, as do his prior managing photo editors, including Anna Valderrama, and the editorial operations manager overseeing the calculation and payment of Plaintiff's royalty fees.  Valderrama Decl. ¶¶ 2, 9, 10, 12.  Plaintiff's communications with these individuals have been in Spanish.  *Id.*  Any non-electronic documents would be located there as well.  *See also Rudersdal v. Harris*, 2020 WL 9815180, at *29 (S.D.N.Y. Aug. 18, 2020) ("It is clear, then, that the vast majority of witnesses, documents, and other sources of proof necessary to conduct trial in this matter are located in Bulgaria, making it unnecessarily difficult and costly to conduct trial here.").  In sum, this case lacks any bona fide connection to the United States.

There is also clear evidence of forum-shopping in Plaintiff having brought this litigation in the United States.  Courts find evidence of forum shopping where there is a "perception that United States courts award higher damages than are common in other countries." *Iragorri v. United Techs.*, 274 F.3d 65, 71 (2d Cir. 2001) (en banc).  Here, Plaintiff has claimed statutory damages for infringement of his copyrights, Compl. ¶¶ 8, 119, 131, which are not available in Spain.[5]

## B.    Spain is an Adequate Alternative Forum

Dismissal of this action on *forum non conveniens* grounds is further warranted because Spain is a more-than-adequate forum to hear Plaintiff's claims: the contract at issue explicitly imbues Spanish courts with jurisdiction, Defendants concede that they

---

[5] *See* Article 140 of the Spanish Intellectual Property Act ("Damages due to the holder of the right infringed shall cover not only the loss suffered but also the lucrum cessans caused by such infringement.  Damages may include, in the event, the expenses made to carry out the investigation to secure reasonable evidence of commission of the infringement that is the object of the judicial proceedings.").  No provision exists for statutory damages comparable to those in the United States.  The act is publicly available at https://www.mjusticia.gob.es/es/AreaTematica/DocumentacionPublicaciones/Documents/The_Intellectual_Property_Act_%28Ley_de_Propiedad_Intelectual%29.PDF.

will be amenable to service of process there, and Spanish law has extensive copyright law provisions.

First, the parties agreed in the Freelancer Agreement that "any disputes arising in connection with it shall be subject to the non-exclusive jurisdiction of the Courts of Barcelona." Compl., Ex. A ¶ 8. Indeed, Reuters España initiated litigation in Spain nearly contemporaneously with the instant suit to resolve the validity of the Freelancer Agreement. Seibel Decl., ¶ 3 & Ex. B.

Second, to avoid any doubt of the ability of Spanish courts to adjudicate this dispute, Defendants consent to jurisdiction in Spain for purposes of this litigation, including the intellectual property claims contained in the Complaint. Valderrama Decl., ¶ 19. This is sufficient to show the adequacy of the alternate forum. *See Yung v. Lee*, 160 F. App'x 37, 41 (2d Cir. 2005); *Aguinda v. Texaco*, 303 F.3d 470, 477 (2d Cir. 2002) ("An agreement by the defendant to submit to the jurisdiction of the foreign forum can generally satisfy the alternative forum requirement." (cleaned up)); *Pesquera v. Perez*, 2021 WL 254193, at *17 (N.D. Cal. Jan. 26, 2021) (finding that Spain was satisfactory alternative forum where both parties were subject to suit there and in one of the pending Spanish cases, plaintiff "raises the same issue raised in the instant case"); *Bohn v. Bartels*, 620 F. Supp. 2d 418, 430 (S.D.N.Y. 2007) (finding that "the Court is satisfied that an alternative forum exists in Portugal" where there was an action "against the same parties for the same claims" in Portugal).

Third, Spain is an adequate alternative forum because it permits litigation of the subject matter of this dispute. In terms of Plaintiff's copyright claims, the Spanish Intellectual Property Act contains extensive provisions covering copyright law, and

Plaintiff can bring his infringement claims in that court.  The Second Circuit has already recognized the adequacy of a foreign forum that has copyright law principles and is capable of adjudicating copyright ownership and infringement claims, which is particularly instructive here.  *See The Wave Studio v. Gen. Hotel Mgmt.*, 712 F. App'x 88, 90 (2d Cir. 2018) ("[A]s the mere existence of the Singapore Copyright Act illustrates, Singapore law includes copyright principles. The record contains no reason to conclude that Singapore courts are not entirely capable of properly adjudicating copyright ownership and infringement claims.").  And, in terms of the validity of the Freelancer Agreement, the Spanish Civil Code contains extensive provisions to govern the contractual provisions at issue; indeed, the Freelancer Agreement requires application of Spanish law.  *See* Compl., Ex. A, § 8.  There can be no doubt that Spain is an adequate forum for this dispute.

## C.   Balance of Private and Public Interest Factors Favors Dismissal

Dismissal under *forum non conveniens* is also warranted because both private and public interest factors favor dismissal in this case.

### 1.  Private Interest Factors Favor Dismissal

When considering private interest factors, the Court will examine

the relative ease of access to sources of proof; the availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; the possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive.

*Aenergy, II*, 31 F.4th at 132-33 (cleaned up).

These factors favor dismissal here.  Most importantly, Spain is the practical choice for litigating this dispute because the key events took place there, *see* Valderrama Decl. ¶¶ 6-14, and so all of the practicalities of litigating—including access to proof—

favor dismissal.  Plaintiff is a Spanish photographer based out of Spain who entered into an agreement governed by Spanish law.  *See Murray v. BBC*, 81 F.3d 287, 295 (2d Cir. 1996) (private interest "heavily" favored dismissal where "a major issue in this action concerns the terms of the contract" which would require testimony from foreign witnesses).

In addition, Defendants have identified witnesses and sources of proof in Spain, and many of those witnesses and documents would require translation, which also favors dismissal.  *See, e.g.*, *Overseas Media v. Skvortsov*, 441 F. Supp. 2d 610, 618-19 (S.D.N.Y. 2006) (translation problems and "language barrier" favored dismissal), *aff'd*, 277 F. App'x 92 (2d Cir. 2008); *Friedman v Arduino*, 854 F. App'x 390, 392-93 (2d Cir. 2021) ("the majority of witnesses and documents relevant to Friedman's claims are located in the Netherlands.  Extensive translation would also be required for litigation in Connecticut; European data privacy protections would potentially impose costly burdens in relation to discovery; securing uncooperative witnesses would be a cumbersome process").  Communications with Plaintiff during the time that he performed services for Reuters España were primarily in Spanish.  Valderrama Decl. ¶¶ 9, 10.  Further, Plaintiff's primary language is Spanish, meaning his deposition and any appearance, including trial, would require translation services.  *Id.* ¶ 17.  Reuters España directed Plaintiff's engagements from Spain, and he received his assignments from a Madrid-based photo editor.  Id. ¶¶ 7, 9.  In terms of any financial documents relevant to a claim of alleged damages, the editorial operations manager overseeing the calculation and payment of Plaintiff's royalty fees is based in Spain, and fees were paid into Plaintiff's bank account in Spain.  *Id.* ¶ 12.  Communications about Plaintiff's assignment fees and

royalty fees were likely in Spanish as well, per the typical practices of Reuters España

*Id.* ¶ 13.

In short, "an overwhelming proportion of the witnesses and evidence in this

action is concentrated" in Spain, favoring dismissal. *Skvortsov*, 441 F. Supp. 2d at 618.

### 2. Public Interests Favor Dismissal

When evaluating public interest factors, the Court will consider "administrative

difficulties associated with court congestion; the unfairness of imposing jury duty on a

community with no relation to the litigation; the interest in having localized controversies

decided at home; and avoiding difficult problems in conflict of laws and the application

of foreign law." *Aenergy II*, 31 F.4th at 133. As with the private factors, the public

interest factors favor dismissal here, primarily because this community has no relation to

the litigation.

*Paolo* is particularly instructive. There, the "crux" of the case was "a dispute

centered in Portugal, regarding a Portuguese citizen, who entered a contract in Portugal,

under Portuguese law, in the Portuguese language, concerning ownership rights of

photographs taken in Portugal and around the world but not in the United States." *Paolo*,

2023 WL 2707201, at *12. Under those facts, the court found that the public interest

factors favored dismissal, because it was "a dispute more appropriately considered by

jurors in Portugal than in this District, and adjudication in Portugal would allow

Portuguese courts to apply Portuguese law to the threshold issues." *Id.*

All of the same rationales apply here: this dispute is centered in Spain, regarding a

Spanish citizen, who entered a contract in Spain, governed by Spanish law, concerning

rights of photographs taken almost exclusively in Spain (as well as Portugal and

Morocco, but not the United States), which is a dispute more appropriately considered by

13

fact-finders in Spain, applying Spanish law to the threshold issues.  *See also Dow Jones & Co. v. Juwai Ltd.*, 2023 WL 2561588, at \*11 (S.D.N.Y. Mar. 17, 2023) ("The public factors also weigh strongly in favor of a Hong Kong forum.  While this Court can address questions of Hong Kong law, Hong Kong courts are plainly better suited to the task.  This alone is a strong—though not dispositive—factor favoring dismissal.").

For these reasons, this action should be dismissed on the basis of *forum non conveniens*.

## II.   IN THE ALTERNATIVE, THE ACTION SHOULD BE DISMISSED OR STAYED BASED ON INTERNATIONAL COMITY

In the alternative, this action should be dismissed or stayed based on international comity because there is a pending litigation in Spain that will resolve the validity of the Freelancer Agreement.

"A court has the inherent power to dismiss or stay an action based on the pendency of a related proceeding in a foreign jurisdiction."  *Ole Media Mgm't v. EMI Apr. Music*, 2013 WL 2531277, at \*2 (S.D.N.Y. June 10, 2013); *see JP Morgan Chase Bank v. Altos Hornos de Mex.*, 412 F.3d 418, 424 (2d Cir. 2005) (affirming district court's exercise of discretion to dismiss on grounds of international comity).  Such a stay or dismissal is granted on the basis of international comity—"a discretionary act of deference by a national court to decline to exercise jurisdiction in a case properly adjudicated in a foreign state, the so-called comity among courts."  *Maxwell Commc'n. Corp. v. Societe Generale*, 93 F.3d 1036, 1047 (2d Cir. 1996).  Such comity reflects a "proper respect for litigation in and the courts of a sovereign nation, fairness to litigants, and judicial efficiency."  *Royal & Sun Alliance Ins. Co. of Can. v. Century Int'l Arms*, 466 F.3d 88, 94 (2d Cir. 2006).

In determining whether to grant such a stay or dismissal, the Second Circuit has articulated five non-exclusive factors courts should consider.  These include: "the similarity of the parties and issues; the interests of judicial economy; the order in which the actions were filed; the adequacy of the alternative forum; and the convenience of, and potential prejudice to, either party."  *Ole Media*, 2013 WL 2531277, at *3 (citing *Royal & Sun Alliance*, 466 F.3d at 94).  Courts have also looked at "the connection between the litigation and the United States, and the connection between the litigation and the foreign jurisdiction."  *Royal & Sun Alliance*, 466 F.3d at 94.  A court is not to apply "a mechanical checklist" but rather to conduct "a careful balancing of the important factors . . . as they apply in a given case."  *Id.* ("No one factor is necessarily determinative; a carefully considered judgment taking into account both the obligation to exercise jurisdiction and the combination of factors counselling against that exercise is required.").  In addition, though the factors are the same, "the factors may be weighted differently when a stay, rather than abstention, is considered."  *Tarazi v. Truehope Inc.*, 958 F. Supp. 2d 428, 434 (S.D.N.Y. 2013) (collecting cases).  While admittedly "[t]he task of a district court evaluating a request for dismissal based on a parallel foreign proceeding is not to articulate a justification for the exercise of jurisdiction, but rather to determine whether exceptional circumstances exist that justify the surrender of that jurisdiction," *Royal & Sun Alliance*, 466 F.3d at 93, such exceptional circumstances exist in this case.

## A.      Similarity of the Parties and Issues

The pending litigation in Spain bears substantial similarity to this action, which strongly favors a stay or dismissal here.  *See Ole Media*, 2013 WL 2531277, at *3 (noting

that the parties need not be identical, but that "the relevant test is whether the parties are substantially similar").

For one, the parties are substantially similar—and in many cases, identical. Here, Mr. Marchante is a named party in both actions. Defendants and the entities involved in the Spanish case are corporate affiliates of each other, and are all wholly-owned subsidiaries of the larger Thomson Reuters Corporation. This is sufficient similarity for comity purposes. "Generally, parties in two cases are 'substantially similar' for the purposes of this analysis when they are affiliates or have a similarly close relationship." *Tarazi*, 958 F. Supp. 2d at 434; *see Experience Hendrix v. Noel Redding Est.*, 2023 WL 3479699, at *2 (S.D.N.Y. May 16, 2023) (finding substantial similarity even if "distinct affiliate [entities] of Sony are involved in the two actions"); *Argus Media v. Tradition Fin. Servs.*, 2009 WL 5125113 , at *6 (S.D.N.Y. Dec. 29, 2009) (finding sufficient similarity where "both actions involve Defendants' (and/or their affiliates') right to copy and distribute [plaintiff's] copyrighted work").

The issues at stake are sufficiently similar as well. Here, the underlying question in this case is whether, under Spanish law, Plaintiff terminated the Freelancer Agreement. If the agreement was not terminated, the exclusive license he granted to Defendants remains in place and Defendants cannot be held liable for either copyright infringement or distribution of false copyright management information. In similar situations, where an "agreement is the font from which all the disputes flow," *Tarazi*, 958 F. Supp. 2d at 437, courts have found that the issues were substantially parallel.

For example, in *Tarazi*, a Canadian corporation called Truehope entered into a marketing and distribution agreement with members of the Stringham family, granting

them an exclusive license to market, sell and distribute a vitamin supplement in the

United States.  958 F. Supp. 2d at 431.  This exclusivity agreement was governed by the

law of the Canadian province of Alberta.  *Id.*  Two separate suits were later filed: (1) a

lawsuit filed in Canada by Truehope alleging, among other things, that the Stringhams

had breached the exclusivity agreement by assigning their rights to a joint venture with

other parties and (2) a lawsuit filed in the Southern District of New York by the parties to

the joint venture with the Stringhams, alleging that Truehope breached the agreement by

entering into an agreement allowing someone else to sell the supplement in the United

States.  *Id.* at 431-32.  The court found that, regardless of which way the Canadian court

ruled, it would have an impact on the Southern District action:

> Here, if the Canadian court rules in favor of Truehope as to the meaning of
> the Exclusivity Agreement, this action will be resolved: the assignment to
> the Joint Venture will be void and [the party to the joint venture] will have
> no rights under Exclusivity Agreement, completely undermining the
> claims here.  If the Canadian court rules against Truehope on that issue, its
> ruling will be 'instructive on the ultimate resolution' of this action because
> it will have determined the meaning of the Exclusivity Agreement under
> Alberta law.

*Id.* at 435.  Here too, if the Spanish court rules in favor of Reuters, this action will be

resolved.  If the court rules in favor of Plaintiff, it will have determined the meaning of

the Freelancer Agreement under Spanish law, and the parties can proceed to litigate the

copyright issues.

Other courts in this District regularly reach the same conclusion.  *See FRHUEB v.*

*Abdala*, 2022 WL 7150242 , at *3 (S.D.N.Y. Sept. 30, 2022) (staying trademark claim

where parallel litigation in Dubai between the parties would determine whether

defendants retained ownership of company that owned the marks, because "if

Defendants' claim is found to be true, this would raise serious questions as to whether

FRHUEB Inc. owns the disputed trademarks and whether Defendants' conduct constitutes infringement"); *Thornton Tomasetti v. Anguillan Dev. Corp.*, 2015 WL 7078656, at *3 (S.D.N.Y. Nov. 13, 2015) (finding identity of issues where U.S. action and Anguillan action "concern the same issue: whether [plaintiff] performed or breached its duties under the Agreements"); *Ole Media*, 2013 WL 2531277, at *4 (finding similarity where determination in Canadian court of which assets plaintiff purchased from defendant would have "significant bearing, and *res judicata* effect on the dispute regarding" payment of royalties based on those assets in American action).

**B.     Interests of Judicial Economy**

The interests of judicial economy also favor dismissal or, at the very least, a stay in favor of the Spanish action.  "[I]n the absence of a stay or dismissal, for at least a time, both courts would be engaged in the same task," interpreting the status of the Freelancer Agreement.  *See Ole Media*, 2013 WL 2531277, at *4; *see also Thornton Tomasetti*, 2015 WL 7078656, at *4.  Consequently, there would be a "possibility of inconsistent and/or varying outcomes," which would "prejudice the parties, as would requiring them to bear the burden and expense of litigating both overlapping actions simultaneously." *FRHUEB*, 2022 WL 7150242, at *3.  Moreover, the Spanish court is best positioned to interpret the Freelancer Agreement and apply Spanish law regarding termination "without the need for expert testimony."  *See Tarazi*, 958 F. Supp. 2d at 438.

**C.     Order in Which the Actions Were Filed**

Courts also consider the order in which the actions were filed.  Here, Plaintiff filed his actions two days before Reuters España instituted its case in Spanish court. While courts do often defer to the first-filed action, "the importance of this factor is reduced when the relevant actions were filed in close temporal proximity to one another

and where the first-filed action has not 'reached a more advanced stage' than the later action." *Id.* at 436 (quoting *Taub v. Marchesi Di Bartolo*, 2009 WL 4910590, at *6 (E.D.N.Y. Dec. 10, 2009)).  Here, only two days passed between the filing of this lawsuit and the Spanish action.  Both cases are still in their infancy.

### D.    Adequacy of the Alternative Forum

As discussed in more detail *supra* at 9-11, the Spanish court is an adequate alternate forum.  The Freelancer Agreement expressly provides that it has jurisdiction to hear disputes under it, and Defendants in this action have also consented to its jurisdiction over the specific intellectual property claims asserted as well.

### E.    Convenience and Potential Prejudice to the Parties

Plaintiff cannot seriously dispute that Spain is a more convenient forum for him personally.  He is a Spanish citizen who lives in that country.  *See* Compl. ¶ 9.  His royalty payments were sent to his Spanish bank account.  Valderrama Decl. ¶ 12.  While Defendants are based in this forum, the factual issues in dispute largely involve their sister company, Reuters España, which is based in Madrid and for whom a Spanish forum would indisputably be more convenient.  For example, the photo editors directing Plaintiff's assignments and the editorial operations manager overseeing the payment of royalty fees to Plaintiff were all based in Spain.  *Id.* ¶¶ 7, 9, 12.  Plaintiff primarily speaks Spanish, and his communications with his editors were in that language.  *Id.* ¶¶ 9, 10, 17.

Setting aside the convenience of the parties and witnesses involved, if both cases go forward the "possibility of inconsistent and/or varying outcomes regarding" the continued validity of the Freelancer Agreement "would prejudice the parties, as would requiring them to bear the burden and expense of litigating both overlapping actions simultaneously."  *FRHUEB*, 2022 WL 7150242, at *3.

**F.**     **Connection Between the Litigation and the United States or Spain**

Applying the law of common sense, this dispute's connection with Spain is far stronger than with the United States.  As in the *Tarazi* case, the core issue in this case is one involving a foreign contract.  "Because the document that lies at the foundation of these actions has a close connection with the foreign forum and is to be interpreted according to the laws of the foreign forum, it is appropriate to defer to that forum." *Tarazi*, 958 F. Supp. 2d at 436.  While this action separately presents questions of U.S. copyright law, none of that matters if the Freelancer Agreement is found to still be in effect.  Under comity principles, this factor weighs heavily in favor of dismissal or a stay.

Therefore, for all of the above reasons, this Court should dismiss or stay this action on comity grounds.

**III.     IN THE ALTERNATIVE, THE COMPLAINT SHOULD BE DISMISSED BECAUSE THE FREELANCER AGREEMENT IS VALID**

Should the Court decline to dismiss or stay this action in favor of resolution in Spain, this action should be dismissed for failure to state a claim under Rule 12(b)(6).  Even if one were to accept Plaintiff's allegations as true, the Freelancer Agreement was ***not*** terminated in April 2021 and is still valid.

**A.**     **The Freelancer Agreement Granted an Exclusive License and For a Perpetual Term**

Notably, Plaintiff does not dispute that the Freelancer Agreement provided Reuters, including both Defendants, with an exclusive license to use his photographs for a perpetual term.  Compl. ¶ 31.  A license "immunizes the licensee from a charge of copyright infringement, provided that the licensee uses the copyright as agreed with the licensor," *Davis v. Blige*, 505 F.3d 90, 100 (2d Cir. 2007).

**B.      Plaintiff's Theory That He Terminated the Freelancer Agreement in April 2021 Is Incorrect**

Despite the provisions of the Freelancer Agreement, Plaintiff contends that he was entitled on his own to terminate the Freelancer Agreement and the license contained therein because Reuters España committed various material breaches of the parties' agreement.  Specifically, Plaintiff's theory of the case is that he "ha[d] the right to unilaterally terminate an agreement if the breaching party commits an 'essential' breach."  Compl. ¶ 2 n.4.  Under Plaintiff's theory, he purportedly communicated that termination in a letter to Reuters España on April 30, 2021.  *See id.* ¶¶ 3, 58, 61, 62, 65, 66, 72, 75, 76, 78, 79; *see also* Seibel Decl., Ex A (the letter).

But on that date, Plaintiff did not yet have knowledge of those supposed material breaches.  Plaintiff expressly alleges that at the time he sent his April 30, 2021 letter he had only "***beg[u]n to suspect*** that Reuters had committed serious and essential breaches of the [Freelancer] Agreement."  Compl. ¶ 39 (emphasis added).[6]  Without knowledge, but only a beginning of a suspicion of a breach, Plaintiff lacked a basis to terminate the contract in April 2021.  Put differently: If he was unaware of any breach on April 30, 2021—let alone an essential or material one—he cannot have unilaterally terminated the contract on that date.

Indeed, the April 30, 2021 letter does not claim that any material breach had occurred or cite such a breach as the basis for Plaintiff's decision to terminate the Freelancer Agreement.  *See* Seibel Decl., Ex. A.  For instance, in his letter Plaintiff did

---

[6] The Complaint provides the date that Plaintiff allegedly arrived at the belief that "Reuters had committed essential, serious and material breaches of the Royalty Agreement and [that] based on these facts, Reuters would never honor its obligations, justifying termination of the agreement under Spanish law."  *Id.* ¶ 44.  But it was seven months later, in November 2021.  *Id.* ¶ 42.

***not*** state that Reuters had failed to provide him with royalty information in the past, or cite Reuters' previous alleged failure to provide royalty statements as a basis for his decision to terminate the Royalty Agreement.  *Id.*  In addition, the Plaintiff's letter did ***not*** assert that any royalties had not been paid, or had been paid late.  *Id.*  Rather, Plaintiff simply requested a royalty report up to May 30, 2021, *id.*, as you might expect a person at the end of his working relationship with a company to do.

Further, the April 30, 2021 letter does not contain any "demand" for payment, as Plaintiff contends.  *Cf.* Compl. ¶ 30.  Instead, the letter states that Plaintiff decided to terminate the Freelancer Agreement because his freelance relationship with Reuters had concluded with the signing of his employment-related settlement agreement.  *See* Seibel Decl., Ex. A.  That had occurred in March 2021, the prior month.  Compl. ¶ 37.  By the terms of the Freelancer Agreement, the conclusion of the freelance relationship did not present grounds for termination of the license provided therein.  *See* Compl., Ex. A ¶ 6 (stating that "[i]f you stop carrying out assignments for Reuters, your rights to receive payment under paragraph 3 will continue, as will the rights you grant under paragraph 2").  Therefore, Reuters reasonably rejected his attempt to terminate the agreement.

## C.   **Subsequent Communications Did Not Terminate the Freelancer Agreement Either**

While Plaintiff had communications after April 30, 2021 with Reuters, the Complaint is clear that these later emails were ***not*** requests to newly terminate the Freelancer Agreement.  Instead, Plaintiff continued to claim that he had terminated the Freelancer Agreement on April 30, 2021.  In the Complaint's wording,  he "follow[ed]-up," "again reminding Reuters that he had terminated the [Freelancer] Agreement," *id.* ¶ 41, "remind[ed] them that the [Freelancer] Agreement was terminated," *id.* ¶ 45 (quoting

email as saying he "sent written termination of the 2005 royalty agreement on May 30, 2021," the date the April 30, 2021 letter stated the termination was to take effect); and "sent yet another termination reminder," *id.* ¶ 47.

The Complaint highlights in bold one section of one of those communications, an email he sent to Reuters' counsel on September 8, 2022.  *See id.*  This email does reference an "essential breach," Reuters' claimed failure to pay royalties owed.  *Id.*  The email is clear that Plaintiff was contending, as in his other communications with Reuters, that the Freelancer Agreement had been terminated by his April 30, 2021 letter, not that he was intending to newly terminate the Freelancer Agreement by this email.  He repeatedly references that May 30, 2021 date where the termination was to take effect per his April 2021 letter.  *See id.*  He expressly states that he was unaware of the failure to pay royalties until he was provided with remittance statements.  *Id.*  That occurred in November 2021, *id.* ¶ 42, seven months too late to justify an April 2021 termination, as discussed above.  The Complaint itself refers to this email as a "termination reminder . . . to remind Reuters that termination of the [Freelancer] Agreement occurred on the basis of an 'essential breach.'"  *Id.* ¶ 47

\*     \*     \*

In sum, Plaintiff has always claimed to have terminated the Freelancer Agreement on a specific day—April 30, 2021.  On that day, Plaintiff had no knowledge of any supposed material breach and did not claim any such breach as the basis of his supposed termination of the agreement.  Therefore, his unilateral declaration that the Freelancer Agreement was terminated had no force and effect.  Because the Freelancer Agreement remains in effect, Defendants maintain their full ability to use the images at issue.

Therefore, there is no claim for copyright infringement.  *See Davis*, 505 F.3d at 100.

Moreover, because Defendants still had the right to license Plaintiff's photographs, they

did not distribute any false copyright management information.  *See* Compl. ¶¶ 126

(claiming information falsely described Reuters as an authorized licensor and

communicated "that only Reuters is displaying and offering for licensing Marchante's

Photographs").

     For those reasons, the Complaint should be dismissed for failure to state a claim.

<u>**CONCLUSION**</u>

     For all of the foregoing reasons, Defendants respectfully request that the Court

grant their motion to dismiss Plaintiff's complaint based on *forum non conveniens*, to

dismiss or stay it in the interest of international comity, or in the alternative, to dismiss it

for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).

Dated:  December 4, 2023

Respectfully submitted,

**BALLARD SPAHR LLP**

By: /s/ *Thomas B. Sullivan*
    Thomas B. Sullivan
    Catherine Seibel
1675 Broadway, 19th Floor
New York, NY 10019
Tel.:  (212) 850-6139
Fax:  (212) 223-1942
sullivant@ballardspahr.com
seibelc@ballardspahr.com

*Counsel for Defendants*