UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

RAFAEL MARCHANTE,

                            Plaintiff,

            v.

REUTERS AMERICA LLC, et al.,

                            Defendants.

23 Civ. 8864 (DEH)

**OPINION
AND ORDER**

DALE E. HO, United States District Judge:

In this action, Plaintiff Rafael Marchante sues Defendants Reuters America LLC and

Reuters News & Media Inc., subsidiaries of Thomson Reuters Corporation, alleging copyright

infringement.  Defendants move to dismiss on grounds of *forum non conveniens* and failure to

state a claim, and alternatively seek a stay of proceedings pending resolution of a parallel

Spanish action.  For the reasons given below, Defendants' motion to dismiss is **GRANTED**.

## BACKGROUND

The following facts are taken from the Complaint (unless otherwise indicated) and are

assumed to be true solely for purposes of adjudicating Defendant's motion.  *See Buon v.

Spindler*, 65 F.4th 64, 69 n.1 (2d Cir. 2023).[1]

Plaintiff is a photographer and photojournalist.  *See* Compl. ¶ 21, ECF No. 1.  He is a

Spanish citizen, residing in Spain.  *Id.* ¶ 9.  Non-party Thomson Reuters Corporation ("Thomson

Reuters") is a large, publicly-traded Canadian corporation, and is one of the world's largest

---

[1] Because Defendants move to dismiss on the basis of *forum non conveniens*, the Court may
consider materials outside the pleadings in resolving the motion.  *See Aguas Lenders Recovery
Grp. v. Suez, S.A.*, 585 F.3d 696, 697 n.1 (2d Cir. 2009) ("The factual recitation here [on a
motion to dismiss based on *forum non conveniens*], while primarily taken from the complaint, is
supplemented with information from affidavits.").  To the extent the Complaint's allegations are
meaningfully contradicted by the submitted testimony, the Court relies upon the submitted
evidence.  The declaration testimony submitted by the parties is discussed *infra*, as necessary to
resolve Defendants' motion.

providers of business information and newsgathering services. *Id.* ¶¶ 1 n.1, 13. Thomson Reuters owns and controls Defendants Reuters America LLC and Reuters News & Media Inc., two Delaware corporations which are Thomson Reuters' principal United States operating subsidiaries. *Id.* ¶¶ 10, 11.

Plaintiff began working for various subsidiaries of Thomson Reuters in November 2002 as a freelance photographer.[2] *Id.* ¶ 22. Between 2002 and 2020, Plaintiff authored at least 20,110 photographs and supplied them to such subsidiaries. *Id.* ¶ 26. Throughout this period, Reuters entities paid Plaintiff for his services first at a fixed rate, then at a fixed rate subject to a minimum, and finally, on a salary basis. *Id.* ¶¶ 23-25.[3]

In July 2005, Plaintiff entered into a royalty agreement with Reuters Spain (the "Royalty Agreement"). *Id.* ¶ 28; Royalty Agreement § 1.1, ECF No. 1-1. The Royalty Agreement granted Reuters Spain an exclusive license to use and further license Plaintiff's photographs supplied or taken while on assignment for Reuters, while affirming that Plaintiff retained copyright in his photographs. Compl. ¶¶ 31, 34; Royalty Agreement §§ 2.1. By its terms, the Royalty Agreement applied retroactively to photographs taken prior to the date of the agreement. Compl. ¶ 31; Royalty Agreement § 1.2. It obligated Reuters to compile information on the licensing of Plaintiff's photographs and to pay Plaintiff a percentage fee of any licenses, on a quarterly basis. Compl. ¶¶ 32-33; Royalty Agreement §§ 3.2, 3.5.

---

[2] The Complaint refers to "Plaintiff's work for Reuters" and his "supplying his Photographs to Reuters" and states that the term "Reuters" refers to, "[u]nless otherwise specified, any Reuters subsidiary of Thomson Reuters Corporation." Compl. ¶¶ 2 n.3, 22. This opinion will specify the Reuters entity at issue when possible.

[3] The Complaint alleges that Defendants (i.e., Thomson Reuters' American subsidiaries) paid Plaintiff for his services, *see* Compl. ¶¶ 23-25, while Defendants introduce evidence that Reuters Spain paid Plaintiff, *see* Valderrama Decl. ¶ 11, ECF No. 46, and Plaintiff produces evidence that he received payment from a Reuters office in London, *see* Marchante Decl. Ex. E, ECF No. 53-5.

In November 2020, Reuters terminated Plaintiff's services.  Compl. ¶ 35.  On March 26, 2021, Plaintiff and Reuters executed a settlement agreement in Lisbon related to the end of Plaintiff's work, which included a stipulation between the parties that Plaintiff was not an employee for purposes of labor law.  *See id.* ¶ 37; *id.* Ex. B at 1, 7, ECF No. 1-2.  That agreement expressly reserved all rights related to the Royalty Agreement.  *Id.* ¶ 37; *id.* Ex. B at No. 13.

Through the end of his work with Reuters, Plaintiff regularly requested the quarterly remittance statements, but did not receive any.  *Id.* ¶¶ 38, 41.  On April 30, 2021, on "susp[icion] that Reuters had committed serious and essential breaches of the Royalty Agreement," Plaintiff sent letters to Reuters Spain and Reuters Portugal, terminating the Royalty Agreement and demanding Reuters stop using his photographs within thirty days, or as of May 30, 2021.  *Id.* ¶ 39; Marchante Decl. Exs. A & B, ECF Nos. 53-1, 53-2.  Plaintiff subsequently sent numerous letters demanding the remittance statements, each time stating that Plaintiff had terminated the Royalty Agreement.  Compl. ¶ 41.  On November 19, 2021, Reuters London provided Plaintiff with various remittance statements, which indicated that Plaintiff was not paid remittances at all from November 2002 through the first quarter of 2007, and was underpaid from 2007 through 2016.  *Id.* ¶¶ 42, 43; Marchante Decl. ¶¶ 28-29.  In communications directed to Reuters staff in New York and Poland dated August 5, September 8, October 21, October 27, November 2, November 9, and November 15, 2022, Plaintiff requested that Reuters stop licensing and using his photographs, in light of the termination of the Royalty Agreement.  Compl. ¶¶ 45, 47; Marchante Decl. Ex. C, ECF No. 53-3.  Through counsel, Plaintiff also sent a takedown demand on June 19, 2023.  Compl. ¶ 49.  As of the filing of the Complaint, Defendants and other Thomson Reuters subsidiaries continue to use and license Plaintiff's photographs.  *Id.* ¶¶ 49-53.

On October 9, 2023, Plaintiff filed the Complaint.  *See id.*  On October 11, 2023, Reuters Spain sued Plaintiff in Spain, seeking a declaratory judgment regarding the ongoing validity of

the Royalty Agreement.  *See* Seibel Decl., Ex. B, ECF No. 47-2.  On December 4, 2023,

Defendants moved to dismiss the Complaint.  *See* Mot. to Dismiss, ECF No. 44.  In letters filed

March 8, 2024, March 20, 2024, and March 21, 2024, the parties reported that the Spanish action

was dismissed for failure to respond to the Spanish court's orders and pay a judicial tax, the

equivalent of a filing fee, and that Reuters Spain subsequently filed an identical action, which

was accepted by the Spanish Court on February 28, 2024.  *See* ECF Nos. 63-65.

## DISCUSSION

The common law doctrine of *forum non conveniens* allows a district court to dismiss an

action over which it has jurisdiction so that the case may be heard in a more convenient foreign

forum.  *Cap. Currency Exch., N.V. v. Nat'l Westminster Bank PLC*, 155 F.3d 603, 607 (2d Cir.

1998).

> There are three steps to the *forum non conveniens* inquiry: (1) determine the degree
> of deference properly accorded the plaintiff's choice of forum; (2) consider whether
> the alternative forum proposed by the defendants is adequate to adjudicate the
> parties' dispute; and (3) balance the private and public interests implicated in the
> choice of forum.

*Celestin v. Caribbean Air Mail, Inc.*, 30 F.4th 133, 145 (2d Cir. 2022).[4]  "[F]orum non

*conveniens* dismissal lies wholly within the broad discretion of the District Court and may be

overturned only when . . . that discretion has been clearly abused."  *Aenergy, S.A. v. Rep. of Ang.*,

31 F.4th 119, 128 (2d Cir. 2022); *accord Wiwa v. Royal Dutch Petroleum Co.*, 226 F.3d 88, 99

(2d Cir. 2000) ("The grant or denial of a motion to dismiss for *forum non conveniens* is generally

committed to the district court's discretion."); *Peregrine Myanmar Ltd. v. Segal*, 89 F.3d 41, 46

(2d Cir. 1996) ("Appellate review of a *forum non conveniens* decision is extremely limited.").

---

[4] In all quotations from cases, internal quotation marks, citations, footnotes, ellipses, brackets,
and other modifications are omitted unless otherwise indicated.

**A.      Level of Deference to Plaintiff's Choice of Forum**

First, the Court must determine how much deference to give Plaintiff's choice of forum. Here, the Court concludes that Plaintiff's forum choice is not entitled to substantial deference. This is primarily due to his residence in Spain and the availability of evidence relating to the performance and termination of the Royalty Agreement in Spain, which together point to Spain as a more convenient forum.

"Any review of a *forum non conveniens* motion starts with a strong presumption in favor of the plaintiff's choice of forum." *Norex Petrol. Ltd. v. Access Indus., Inc.*, 416 F.3d 146, 154 (2d Cir. 2005). However, "the degree of deference given to a plaintiff's forum choice varies with the circumstances" and "moves on a sliding scale depending on several relevant considerations." *Iragorri v. United Tech. Corp.*, 274 F.3d 65, 71 (2d Cir. 2001) (en banc). "[A] plaintiff's choice of forum is generally entitled to great deference when the plaintiff has sued in the plaintiff's home forum[,] [b]ut . . . the choice of a United States forum by a foreign plaintiff is entitled to less deference." *Id.*; *accord Aenergy, S.A.*, 31 F.4th at 128 ("[T]he District Court reasonably afforded less deference to the United States forum choice of AE—an entity incorporated in Angola—because it is a foreign plaintiff."). "[A] plaintiff's residence is relevant [to the level of deference given] to the extent that it shows that considerations of convenience, rather than gamesmanship and the pursuit of a favorable forum, motivated the decision to conduct the lawsuit in the United States." *Celestin*, 30 F.4th at 145. "Factors weighing in favor of deference include the convenience of the plaintiff's residence . . . , the availability of witnesses or evidence in the forum district, the defendant's amenability to suit in the forum district, the availability of appropriate legal assistance, and other reasons relating to convenience or expense." *Wamai v. Indus. Bank of Korea*, No. 21 Civ. 1956, 2023 WL 2395675 (2d Cir. Mar. 8, 2023).

These factors point to reduced deference to Plaintiff's choice of forum.  First and foremost, Plaintiff resides in Spain.  Compl. ¶ 9.  Although he states his willingness to testify in this District, *see* Pl.'s Mem. of L. in Opp'n to Defs.' Mot. to Dismiss ("Pl.'s Opp'n") 1, ECF No. 52, and offers evidence that he did not reside in Spain for portions of his time working with Reuters, *see* Marchante Decl. ¶ 16, his residence indicates that his choice of forum is not likely based on convenience.  *See Wamai*, 2023 WL 2395675, at *2 n.1 ("[G]iven the plaintiff's residency abroad, it would be less reasonable to assume the choice of forum is based on convenience.").

The availability of witnesses and evidence also counsels against deference to Plaintiff's choice of forum.  It is first necessary to determine what issues are likely to be meaningfully in dispute and thus subject to evidentiary development.  *Cf. Iragorri*, 274 F.3d at 74 ("Rather than simply characterizing the case as one in negligence, contract, or some other area of law, the court should focus on the precise issues that are likely to be actually tried, taking into consideration the convenience of the parties and the availability of witnesses and the evidence needed . . . .") (discussing the weighing of public and private factors in a *forum non conveniens* analysis).

It is true that this case concerns alleged copyright infringement within the United States by two U.S. subsidiaries of a global media company.  *See* Compl. ¶ 60.  However, Defendants' principal argument—and what the Court finds central to this dispute, i.e., what is most "likely to be actually tried," *Iragorri*, 274 F.3d at 74—concerns whether the Royalty Agreement gives them a valid license to use Plaintiff's photographs.  *See* Nov. 29, 2023, Letter at 2 ("[Plaintiff's] claims are meritless because, *inter alia*, the freelancer agreement between Plaintiff and an affiliate entity allowed Defendants to make the uses of the photographs at issue.").  The Royalty Agreement is a contract signed by a Spanish company and a Spanish national in Spain, related to photographs taken largely in Spain, and which was allegedly terminated in Spain.  *See* Compl.

¶ 9 (Plaintiff resides in Spain); Royalty Agreement 3.2, 3.5 (assigning Reuters Spain the responsibility to pay "or procure that another Reuters Group Company pay[]" Plaintiff the royalty fees and to "provide a report showing the breakdown of royalties," failure of which Plaintiff claims constitutes material breach of the contract); *id.* at 1, Details Form (showing Plaintiff lived in Spain at time of contract formation); Seibel Decl. Ex. A, ECF No. 47-1 (Plaintiff's termination letter, directed to Reuters Spain); Valderrama Decl. ¶ 14, ECF No. 46 ("[A]ll the events alleged in the Complaint that concern the relationship between Plaintiff as a photographer and Reuters [Spain] occurred in Spain (or Morocco or Portugal), [and] [n]one occurred in the United States."). Evidence relevant to these issues would be most conveniently produced in Spain, where both parties to the contract reside or are found.[5]

On the whole, the Court finds that performance, breach, and termination of the Royalty Agreement are the central issues in this case, and that evidence relevant to these matters should guide any inquiry into the convenience of trial in this forum. Therefore, the relative convenience

---

[5] Plaintiff introduces evidence that he received royalties from Reuters London, rather than Reuters Spain. *See* Marchante Decl. ¶ 36, Ex. E, ECF Nos. 53 & 53-5; Hanna Decl. ¶ 20, ECF No. 57. Even if that were the case, Reuters Spain ultimately retained the responsibility to ensure Plaintiff was paid, whether by it or by another Reuters affiliate, *see* Royalty Agreement 3.2. And the fact that payments were made from London does not support deference to Plaintiff's forum choice, because it does not suggest that evidence of performance or breach of the Royalty Agreement is conveniently available *in this forum*. It is also true that if Plaintiff succeeds in proving that Defendants lacked a license to his photographs, evidence as to the extent of the infringement will be relevant to Plaintiff's damages; evidence as to whether Defendants had the requisite intent for a claim of distribution of false copyright management information will also be relevant. *See* Compl. ¶ 62 ("Fact discovery is required to reveal the full extent of the Defendants' infringement in the U.S."), ¶¶ 82-83 (stating that evidence related to downstream infringement will also be relevant); Nov. 29, 2023, Letter at 2, ECF No. 41 ("Even if the Court finds that the freelancer agreement was terminated, Defendants would argue that they lacked the intent required for Plaintiff to bring a claim for distribution of false copyright management information."). Such evidence would be conveniently found in the United States, as it would be held by Defendants in this District. However, in accordance with *Iragorri*, the Court focuses on what it finds to be the issues likely to be actually tried to resolve this dispute. As noted, these issues are the scope and meaning of the Royalty Agreement, which, as noted *supra*, features Spanish parties, concerned photographs taken in Spain, and was allegedly terminated in Spain.

of procuring evidence and witnesses in Spain favors reduced deference to Plaintiff's choice of forum.

Plaintiff emphasizes that Defendants are at home in this District. *See* Compl. ¶ 16 (alleging that Defendants managed the licensing of Plaintiff's Photographs from New York); ¶¶ 18, 19 (alleging that Defendants employ hundreds of employees and own and operate an office in the District). He argues that therefore, "it is reasonable to infer that [his] choice of a New York forum was made to ensure jurisdiction."[6] *See* Pl.'s Opp'n at 10-11.

A plaintiff's need to ensure jurisdiction over defendants can rebut a suggestion of gamesmanship in choosing a forum. *See Iragorri*, 274 F.3d at 72 ("One of the factors that necessarily affects a plaintiff's choice of forum is the need to sue in a place where the defendant is amenable to suit. . . . This is all the more true where the defendant's amenability to suit in the plaintiff's home district is unclear."). However, "[t]he plaintiff's choice of the defendant's home forum provides a much less reliable proxy for convenience." *Pollux Holding Ltd. v. Chase Manhattan Bank*, 329 F.3d 64, 74 (2d Cir. 2003). "[A] plaintiff's choice to initiate suit in the defendant's home forum—as opposed to any other where the defendant is also amenable to suit—only merits heightened deference to the extent that the plaintiff and the case possess *bona fide* connections to, and convenience factors favor, that forum." *Id.* Plaintiff does not introduce evidence of any connections he has to New York. As to connections between the case (as opposed to Defendants or Thomson Reuters generally) and New York, Plaintiff offers: (1) emails

---

[6] That Defendants state they would consent to jurisdiction in Spain for Plaintiff's claims, *see* Valderrama Decl. ¶ 19, does not change this, because the relevant inquiry is whether the totality of circumstances suggests Plaintiff's choice was motivated by considerations of convenience or gamesmanship. *See, e.g.*, *Norex Petrol. Ltd.*, 416 F.3d at 156 ("The fact that defendants . . . will all submit to jurisdiction . . . does not alter the fact that plaintiff's own choice of a New York forum . . . was motivated by genuine jurisdictional convenience and, as such, merits substantial deference on any sliding-scale analysis.").

he sent to Katharine Larsen, counsel at Thomson Reuters based in New York, following termination of the Royalty Agreement, *see* Marchante Decl. Ex. C (compiling emails); Bartolomei Decl. Ex. C, ECF No. 54-3 (listing Larsen's employer as Thomson Reuters); (2) a statement that Defendants sold "[n]umerous" unauthorized licenses to New York customers, including a specific example of downstream infringement by U.S. News & World Report L.P., a New York entity, *see* Compl. ¶¶ 16, 87; and (3) a statement that "Defendants made available and managed the licensing of Marchante's Photographs for public display and distribution from New York," *see id.* ¶ 16.

The Court is skeptical of the first two alleged connections between the cases: first, because the legal relevance of any communications that postdate the alleged termination of the Royalty Agreement is unclear; and second, because on the record before the Court, it is unclear what proportion of unauthorized licenses were sold to customers in New York. Only the last of these—that Defendants allegedly license Plaintiff's photographs from New York—represents a *bona fide* connection to New York. However, the Court finds that this is not sufficient to establish that New York was chosen out of considerations of convenience.

The Court, in considering the totality of the circumstances, also notes certain features of the case. *See Norex Petrol. Ltd.*, 416 F.3d at 154 (finding that, when a foreign plaintiff chooses a U.S. forum, courts should "consider the totality of circumstances supporting a plaintiff's choice of forum"). The Complaint explicitly declines to bring a breach of contract claim, despite repeated allegations of Plaintiff's financial hardship caused by the underpayment of royalties. *See* Compl. ¶¶ 42-44, 59. Plaintiff also testifies to the necessity of contingency fee arrangements to bringing suit, and the rarity of such arrangements in Spain. *See* Marchante Decl. ¶ 42. These facets together suggest that this lawsuit's connections to New York are at least in part due to

choices in structuring this litigation, made in "the pursuit of a favorable forum," rather than purely out of "considerations of convenience." *See Celestin*, 30 F.4th at 145.[7]

"The proper degree of deference [to afford a Plaintiff on his choice of forum] is a sliding scale." *Id*. Plaintiff's foreign residence and the relative convenience of procuring evidence related to the Royalty Agreement in Spain counsel in favor of reduced deference to his choice of forum. While Plaintiff's argument about the need to obtain jurisdiction over Defendants does have some persuasive weight, the totality of circumstances suggests considerations of convenience did not primarily motivate Plaintiff's choice of forum. Accordingly, Plaintiff is entitled to reduced deference to his choice of forum.

## B.     Adequacy of the Alternate Forum

Second, the Court must determine whether Spain represents an adequate alternative forum. The Court finds that Spain is an adequate alternative forum for this dispute.

"An alternative forum is adequate [1] if the defendants are amenable to service of process there, and [2] if it permits litigation of the subject matter of the dispute." *Aenergy, S.A.*, 31 F.4th at 130. "Ordinarily, the requirement of an adequate alternative forum will be satisfied when the defendant is amenable to process in the other jurisdiction. In rare circumstances, however, where the remedy offered by the other forum is clearly unsatisfactory, the other forum may not be an adequate alternative." *Aguinda v. Texaco, Inc.*, 303 F.3d 470, 476-77 (2d Cir. 2002). Defendants bear the burden of establishing that an adequate alternative forum exists. *See Wiwa v. Royal Dutch Petrol. Co*., 226 F.3d at 100; *accord Wamai*, 2023 WL 2395675, at *3.

---

[7] To be clear, the Court is sympathetic to Plaintiff's dilemma, in light of his financial circumstances. However, the inquiry at the first step of the *forum non conveniens* analysis is into "the plaintiff's or the lawsuit's *bona fide* connection to the United States and to the forum of choice" and whether "it appears that considerations of convenience"—as opposed to the favorability of the forum to the plaintiff—"favor the conduct of the lawsuit in the United States." *Iragorri*, 274 F.3d at 72.

Defendants meet this burden.  First, they consent to jurisdiction in Spain.  *See* Valderrama Decl. ¶ 19 ("Reuters would consent to jurisdiction, but defend the litigation on other grounds, in Spain, if Plaintiff were to bring the claims he has asserted in this case there.").  This is sufficient to establish the first prong of the alternative forum inquiry.  *See Paulo v. Agence France-Presse*, No. 21 Civ. 11209, 2023 WL 2873257, at *15 (S.D.N.Y. Jan. 19, 2023) ("An agreement by the defendant to submit to the jurisdiction of the foreign forum can generally satisfy the alternative forum requirement." (quoting *Aguinda*, 303 F.3d at 477)).  Second, Spain also permits litigation of the subject matter of the dispute, namely copyright infringement.  *See Levitin v. Sony Music Ent.*, 101 F. Supp. 3d 376, 392 (S.D.N.Y. 2015) (finding Spain, among other countries, to be an adequate alternative forum for copyright claims in part because it "provides a robust copyright regime").  The principal defense, the continued validity or termination of the Royalty Agreement, will also require the forum hearing the case to apply Spanish law—a task Spanish courts are obviously able to do.  *See* Royalty Agreement § 8.

Plaintiff claims that Defendants must show that Spanish courts "will affirmatively apply U.S. copyright law or agree to hear U.S. claims in Spain."  Pl.'s Opp'n at 15.  This argument fails for several reasons.  First, when affirming dismissals of copyright claims based on *forum non conveniens*, the Second Circuit has articulated the relevant standard as whether foreign courts are "capable of properly adjudicating copyright ownership and infringement claims." *Wave Studio, LLC v. Gen'l Hotel Mgmt. Ltd.*, 712 F. App'x 88, 90 (2d Cir. 2018) (stating in dicta that "the mere existence of the Singapore Copyright Act" is sufficient to show that Singaporean law "includes copyright principles," thus making it an adequate forum); *see also Murray v. British Broadcasting Corp.*, 81 F.3d 287 (2d Cir. 1996) (affirming dismissal of copyright claims based on infringement in the United States).  The putative alternative forum is not required to

"adequately address" U.S.-specific law, but instead must only cover "the essential subject matter

of the dispute." *Aenergy, S.A.*, 31 F.4th at 130-31.

Plaintiff also offers expert testimony that Spanish courts may lack jurisdiction over any

U.S.-based copyright infringement. *See* Ramos Gil de la Haza Decl. ¶¶ 14-16, ECF No. 55

(predicting that Spanish courts would find that they lack jurisdiction over U.S.-based

infringement). However, both Spain and the United States are signatories to international

treaties regarding mutual assistance in intellectual property protection. *See* Berne Convention

for the Protection of Literary and Artistic Works, Art. XXVIII ¶ 2(a)(ii), S. Treaty Doc. No. 27,

99th Cong., 2d Sess. 40 (1986). In any event, the Second Circuit has also made clear that "the

prospect of a lesser recovery [does not] justify refusing to dismiss on the ground of *forum non*

*conveniens.*" *Aenergy, S.A.*, 31 F.4th at 130; *accord Kingstown Cap. Mgmt., L.P. v. Vitek*, 2022

WL 3970920, at *3 (2d Cir. Sept. 1, 2022) (finding that an alternative forum is adequate when

there are "alternative legal actions to address the wrongdoing encompassed" by the plaintiff's

claims). Because Plaintiff does not identify binding precedent in support of his argument

regarding U.S.-based infringement, the Court follows Second Circuit practice in copyright cases

of requiring only some showing of analogous—if not necessarily identical—intellectual property

protections in the alternative forum. Accordingly, Spain represents an adequate alternative

forum for Plaintiff's claims.

## C.     *Gilbert* Factors

Finally, the Court must determine whether application of a collection of factors

articulated by the Supreme Court in *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501 (1947) (the "*Gilbert*

factors"), favors dismissal. The Court finds that it does.

"Even where the degree of deference to a foreign plaintiff's choice of forum is reduced,

the action should be dismissed only if the chosen forum is shown to be genuinely inconvenient

and the selected forum significantly preferable." *Aenergy, S.A.*, 31 F.4th at 132.  To do so,

courts consider the *Gilbert* factors, which include both public and private interest considerations:

> The private factors to be considered are: (1) the relative ease of access to sources of proof; (2) the convenience of willing witnesses; (3) the availability of compulsory process for attaining the attendance of unwilling witnesses; and (4) the other practical problems that make trial easy, expeditious, and inexpensive. The public interest factors are: (1) court congestion; (2) avoiding difficult problems in conflict of laws and the application of foreign law; (3) the unfairness of imposing jury duty on a community with no relation to the case; and (4) the interest of communities in having local disputes decided at home.

*Olin Holdings Ltd. v. State of Libya*, 73 F.4th 92, 109-10 (2d Cir. 2023).

### 1.    Private Interest Factors

The private interest factors generally favor dismissal.  With respect to factors (1) through

(3), as discussed, the Court finds that "the precise issues that are likely to be actually tried,"

*Iragorri*, 274 F.3d at 74, will center on Plaintiff's relationship with Reuters Spain and his alleged

termination of their contractual relationship.  The parties vigorously dispute where evidence

relevant to these issues lies.  With respect to documents, Defendants have stipulated that physical

documents, to the extent there are any, are in Spain, and that they will make electronic

documents accessible in Spain, irrespective of the precise Thomson Reuters entity that holds

them.  *See* Tr. of Dec. 6, 2023, Hr'g at 14:18-22, ECF No. 54-7 ("[W]ith respect to electronic

discovery, Reuters, in order to facilitate and make this case go forward more easily . . . is not

going to stand on distinctions between the various Reuters corporate entities."); *id.* at 26:22-23

("[I]f there are paper documents, they would exist in Spain. I don't know if they exist or not[.]").

With respect to witnesses, both Plaintiff and Reuters Spain, the parties to the contract, are in

Spain.  Defendants also introduce evidence that Plaintiff's supervisors throughout his work with

Reuters were based in Spain.  *See* Valderrama Decl. ¶ 14; Reply Valderrama Decl. ¶ 6, ECF No.

61.  Plaintiff introduces evidence, including from two other photographers who worked with

Reuters and entered into similar agreements, that royalty payments were handled in London, rather than Spain.  *See* Hanna Decl. ¶¶ 20, 29, ECF No. 57; Barbancho Decl. ¶¶ 13-14, 17, ECF No. 58, Comas Decl. ¶¶ 13-14, ECF No. 59.  It is not necessary to resolve the precise location of all potential witnesses; instead, it suffices to say that while witnesses relevant to this dispute may be located around the world, including in London, Poland, Portugal, and New York, the forum with the greatest concentration of witnesses is Spain.  Accordingly, private factors (1) through (3), which concern "relative ease of access" to evidence and witnesses, favor Defendants.  *Olin Holdings Ltd.*, 73 F.4th at 109.  As to the final factor, if the case were not dismissed, the potential need for translation of Spanish-language documents, both from fact witnesses and regarding the questions of Spanish law central to this case, would pose a "practicable problem[]" to "easy, expeditious, and inexpensive" proceedings here.  *Id.*; *see* Valderrama Decl. ¶¶ 9, 10, 13 (stating that communications between Reuters Spain and Plaintiff were in Spanish); Hanna Decl. ¶ 6 (stating that he communicated with Plaintiff in Spanish).

Plaintiff introduces evidence that due to financial constraints, he has been unable to retain a lawyer in Spain, where working on a contingency basis is uncommon.  *See* Marchante Decl. ¶ 42.  The Court sympathizes with this practical concern.  However, the Second Circuit has stated that the lack of contingency fee arrangements in the alternative forum is "of little weight" in a *forum non conveniens* analysis because "[t]he availability of such arrangements in the United States is based on a policy decision regarding the assertion of rights in American courts where the parties or the claims have some tangible connection with this country."  *Murray*, 81 F.3d at 294.

### 2.    Public Interest Factors

The public interest factors also favor hearing this dispute in Spain, because Spain has a

much greater interest in adjudicating this dispute than the United States.

As to the public interest factors generally, and factors (3) and (4) specifically, *Murray v.*

*British Broadcasting Corp.* is instructive.  There, a British designer created a character, Mr.

Blobby, on a freelance basis for a British media company, which began authorizing and licensing

products bearing the likeness of the character in multiple countries.  *See* 81 F.3d at 289.  The

Second Circuit found that the *Gilbert* public interest factors counseled in favor of dismissal,

rejecting the plaintiff's "argu[ment] that American copyright law will apply to his copyright

infringement claims arising in the United States."  *Id.* at 293.  Instead, it reasoned:

> The central issue in dispute concerns the circumstances surrounding the creation of
> Mr. Blobby. Once that dispute is resolved, the right to exploit the character will be
> quickly resolved. The crux of the matter, therefore, involves a dispute between
> British citizens over events that took place exclusively in the United Kingdom.
> Moreover, it appears that much of the dispute over the creation of Mr. Blobby
> implicates contract law. British law governs those issues. The United States thus
> has virtually no interest in resolving the truly disputed issues.

*Id.*  The same reasoning applies here: once the parties' dispute about the Royalty Agreement is

settled, Defendants' right to license the photographs at issue will be quickly resolved; the central

dispute is between Spanish citizens over events that took place in Spain; and Spanish contract

law will govern these issues.

As to factor (2), the necessity of applying Spanish law counsels in favor of dismissal.  *See*

*Scottish Air Intern., Inc. v. Brit. Caledonian Grp., PLC*, 81 F.3d 1224, 1234 (2d Cir. 1996)

("When deciding a *forum non conveniens* motion, a court may properly rely on the difficulties

attending the resolution of questions of foreign law."); *Aenergy, S.A.*, 31 F.4th at 135 ("[T]he

contracts at issue are subject to Angolan law. The District Court properly held that this suggests

that Angola is a superior forum.").  While Plaintiff introduces evidence of court congestion in

Spain, *see* Monge Decl. ¶ 17, ECF No. 56, this is not sufficient to shift the overall balance of public interest factors that point to Spain, particularly in light of the Second Circuit's guidance in *Murray*.

*      *      *

Taken as a whole, the record supports dismissal on the grounds of *forum non conveniens*. In so holding, the Court is mindful that "just as plaintiffs sometimes choose a forum for forum-shopping reasons, defendants also may move for dismissal under the doctrine of *forum non conveniens* not because of genuine concern with convenience but because of similar forum-shopping reasons." *Iragorri*, 274 F.3d at 75. "[A]rm[ed] . . . with an appropriate degree of skepticism," the Court nevertheless finds that the *Gilbert* factors—in particular, the comparatively greater interest of Spain than the United States in adjudicating this dispute—counsel in favor of dismissal. *Id.* Accordingly, Defendants' motion is granted.

**CONCLUSION**

For the reasons given above, Defendant's motion to dismiss on the basis of *forum non conveniens* is **GRANTED**.  Plaintiff's request for oral argument is **DENIED**, as moot.

The Clerk of Court is respectfully directed to close the motion at ECF. No. 44 and to terminate the case.

SO ORDERED.

Dated: June 7, 2024
       New York, New York

DALE E. HO
United States District Judge